**In re Patrick J. KEATING, Debtor.**

No. 03–54474.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 5, 2003.

John C. Lange, Gold, Lange & Majoros, PC, Southfield, MI, for Debtor.

Paul J. Randel, Detroit, MI, for U.S. Trustee.

*OPINION DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)*

MARCI B. MCIVOR, Bankruptcy Judge.

The United States Trustee filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) for substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code. In determining whether the filing a Chapter 7 case constitutes substantial abuse of the bankruptcy system, the Court must look to the totality of the circumstances surrounding the filing of the case. In this case, after reviewing the filed pleadings and considering the testimony presented at an evidentiary hearing, this Court DENIES the United States Trustee's motion for the reasons set forth below.

## I.

### FACTUAL BACKGROUND

The Debtor, Patrick J. Keating filed a Chapter 7 petition on May 21, 2003. The United States Trustee filed this motion to dismiss under § 707(b) claiming that the Debtor's Chapter 7 bankruptcy constitutes a substantial abuse of the provisions of Chapter 7. The Trustee's motion alleges that the Debtor has substantial income, earning $63,000 per year (with no dependants), and that the Debtor's expenses are inflated. Specifically, the Trustee takes issue with the following expenses: (1) a monthly 401(k) loan repayment of $237; (2) a monthly 401(k) contribution of $262; (3) a monthly food budget of $400; (4) a monthly transportation budget (not including car payment) of $225; (5) a monthly recreation budget of $100; (6) a monthly auto payment of $565; (7) miscellaneous expenses of $100 per month; and (8) "association fees" of $195 per month. In essence, the Trustee argues that, with a little "belt tightening", the Debtor could have sufficient income over and above his expenses so that, had the Debtor filed a Chapter 13 bankruptcy, the unsecured creditors would receive a meaningful dividend.

The Debtor, in his filed pleadings, responds to the Trustee's allegations regarding his expenses, claiming that they are not excessive. With respect to the 401(k) loan repayment of $237, the Debtor claims that he is required by his employer to repay this loan, that if he does not repay the 401(k) loan, he will be forced to pay taxes on these funds, and that he will have to pay a penalty for early withdrawal. The Debtor does not address the Trustee's objection to his $262 per month 401(k) contribution. The Debtor argues that his food expense is reasonable because it represents only $4.44 per meal. The Debtor argues that his transportation expenses are reasonable because the Debtor drives 2000 miles per month and his vehicle gets 20 miles per gallon. Thus, he uses approximately 100 gallons per month at $1.70 per gallon. The Debtor estimates that he spends between $55 and $75 per month on maintenance of his vehicle. Thus, his actual transportation expenses range from $225 to $245 per month.

In response to the Trustee's other objections, the Debtor admits that he spends approximately $100 per month on recreation but argues that this is reasonable. The Debtor admits that his lease payment is $565 per month, but argues that his lease imposes a substantial penalty for early termination. The Debtor also states that his lease expires in May 2004, at which time he will seek to lease a less-expensive vehicle. The Debtor admits that he spends approximately $100 per month on miscellaneous expenses but argues that $3.33 per day is not unreasonable for the small continuous expenses the incurred to survive and go to work each day.

The last disputed expense is the "Association Fees" of $195 per month. The Debtor resides in a condominium. The Debtor states that the "Association Fees", which include monthly water and sewer charges are required under the Condominium Bylaws. Failure to pay the monthly "Association Fees" can result in late charges, and the Condominium Association can place a lien on the Debtor's condominium to secure any arrearages. In sum, the Debtor argues that all his expenses are reasonable and that there is no additional income available to distribute to creditors.

The following additional facts were presented at the evidentiary hearing:

1. In 2001, the Debtor earned approximately $55,000.00. In 2002, the Debtor earned $34,170.00, and in 2003, the

Debtor believes he will earn approximately $63,000.00.

2. The Debtor is employed by an automotive supplier. He has been at his current job since July 2002. Employment in the automotive field is not secure employment. If lay-offs occur, the Debtor could lose his job because he lacks seniority.

3. The Debtor missed one month of work in January 2003 because he had his appendix removed. The Debtor was not paid for this leave of absence.

4. The Debtor was unemployed from December 2001 through July 2002, when the Debtor obtained his current position.

5. Prior to the Debtor losing his job, the Debtor was paying his bills as they became due.

6. During his period of unemployment, the Debtor borrowed from his 401(k) plan and took a second mortgage on his residence to meet current expenses.

7. At the time the Debtor lost his job, the Debtor had substantial credit card debt.

8. At the time the Debtor lost his job, the Debtor had no savings.

9. During his period of unemployment, the Debtor "tightened his belt." He cancelled his cable and did not spend money on clothes.

10. The Debtor did not file for unemployment when he lost his job.

11. When Debtor filed his bankruptcy petition, the Debtor and his attorney determined that his monthly expenses exceeded his monthly income and that there was no excess income available to pay a dividend to creditors.

## II.

## ANALYSIS

### A. "Substantial Abuse" under 707(b)

▮ A bankruptcy court may dismiss a Chapter 7 case where the debts are primarily consumer debts if the court finds that granting a discharge would be a "substantial abuse" of the Bankruptcy Code. Section 707(b) of the Bankruptcy Code provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a *substantial abuse* of the provisions of this chapter. *There shall be a presumption in favor of granting the relief requested by the debtor.*

11 U.S.C. § 707(b) (emphasis added). "In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing." *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989).

▮ To determine whether to dismiss a case under section 707(b), the court must look to the totality of the circumstances. *Krohn,* 886 F.2d at 126. Substantial abuse can be shown either 1) where the debtor has acted dishonestly or 2) where the debtor is not needy, i.e. his financial situation does not warrant a discharge in exchange for the liquidation of his assets.

■ In determining whether the debtor is acting honestly, the court should examine whether the debtor made substantial eve-of-bankruptcy purchases, was dishonest in filing his bankruptcy schedules and other court documents, and whether the bankruptcy was necessitated by unforeseen or catastrophic events. *Id.*

■ In determining whether a debtor is needy, the court should decide whether the debtor could pay his debts out of future earnings, i.e., whether the debtor could fund a hypothetical Chapter 13 plan. This factor alone may compel a dismissal of the case. *Id.* Other factors which may show neediness or a lack thereof include:

1) whether the debtor enjoys a stable source of income;

2) whether he is eligible for adjustment of his debts through Chapter 13;

3) whether there are state remedies with the potential to ease his financial problems;

4) the degree of relief obtainable through private negotiations; and

5) whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities.

*Id.* at 126–27.

In *Krohn,* the Sixth Circuit affirmed the bankruptcy court's dismissal of a debtor's case for substantial abuse, finding that the debtor consistently lived on credit and beyond his means. The court found that the section 707(b) statutory preference in favor of granting relief was inappropriate under the totality of the circumstances. Krohn's income was $4,015 per month and his expenses were $3,950. Even after filing his Chapter 7 petition, the debtor continued to spend excessively; his post petition expenses for a three-month period included $1,065 for dining out, lunch and recreation (in excess of the $355 he was spending on groceries), $169 for cosmetics, and $66 for cigars. He had ample future income and his financial situation was not the result of any unforeseen event or catastrophe. Based on these facts, the Sixth Circuit affirmed the bankruptcy court's dismissal of the case for substantial abuse under 707(b). *Id.* at 127–28.[1]

■ Section 707(b) provides that there shall be a presumption in favor of granting the relief requested by the debtor. Further, it is not the court's role to determine the debtor's budget or to pass personal judgment on the debtor's spending habits. Even so, a determination of substantial abuse "necessitates some evaluation of the debtor's expense and income statements, and thus some scrutiny of their personal spending habits." *In re Tefertiller,* 104 B.R. 513, 514 (Bankr. N.D.Ga.1989).

Deciding whether private schools or five cars or downtown parking or cable TV are reasonable necessities or luxuries necessarily involves judging lifestyles. An inquiry into debtor's "reasonably necessary" expenses is inherent in the examination of debtor's petition for relief. Judgment values of lifestyles have to be made by the court and close questions emerge.... The wisdom of affording such wide latitude to the judiciary in making lifestyle judgments has been

---

1. Prior to *Krohn,* some bankruptcy courts within the Sixth Circuit did not focus on the totality of the circumstances, but instead looked at whether the debtor has sufficient future income to repay a meaningful part of his debt under Chapter 13 or 11. *In re Bell,* 56 B.R. 637, 641 (Bankr.E.D.Mich.1986) (Rhodes, J.). In *Bell,* decided in 1986, the court found that $480 per month for food, mostly at restaurants, and $608 per month for a luxury car was not reasonably necessary. The court concluded that $300 per month for food and the same amount for a car was reasonable.

questioned. However, Congress chose not to define substantial abuse but rather to leave it to the development of court-made law.

*In re Gyurci,* 95 B.R. 639, 643 n. 3 (Bankr. D.Minn.1989) (citations omitted).

In determining whether a debtor's spending is so extravagant and excessive so as to render the chapter 7 filing a substantial abuse, the Court should compare the facts of the case at hand to the facts of *Krohn* and other cases. Cases that were dismissed for substantial abuse due to excessive spending include: *In re Summer,* 255 B.R. 555 (Bankr.S.D.Ohio 2000) (debtor was attorney who grossed about $210,000 per year; debtor could fund a Chapter 11 or 13 plan by reducing expenses through eliminating maid service, cell phones, and payment of grown daughter's college loans, reducing insurance and vehicle replacement cost, and through spouse obtaining employment); *In re Gyurci,* 95 B.R. 639 (Bankr.D.Minn.1989) (debtor was attorney who grossed over $67,000 per year; debtor owned 5 autos, held 17 credit cards which he often used for cash advances, sent two children to college on credit cards, and sent third child to exclusive private high school); *In re Ploegert,* 93 B.R. 641, 642–43 (Bankr. N.D.Ind.1988) (debtor earned $13 per hour and had $20,000 in unsecured consumer debts; debtor listed $840 per month for recreation, including weekend trips); *In re Shands,* 63 B.R. 121, 124 (Bankr.E.D.Mich. 1985) (court dismissed case under 707(b) where debtor filed bankruptcy to discharge debt to ex husband and yet she continued to pay other favored creditors). Court have also found substantial abuse when the Debtor's debts and financial problems are relatively small. *See e.g., In re Busbin,* 95 B.R. 240 (Bankr.N.D.Ga. 1989), (court dismissed under § 707(b) because debtor's only debt was $527 to one creditor); *In re Brown,* 88 B.R. 280, 284 (Bankr.D.Hawai'i 1988) (court dismissed case where debtor sought to discharge debts and retain real estate, stock, and money).

## B. 707(b) Analysis of Circumstance in This Case

■ The Court finds that the Debtor's expenses are generally reasonable. The expenses for food and other miscellaneous expenses are a little high, but not so excessive as to constitute substantial abuse. However, the payroll deductions for 401(k) payments and 401(k) loan repayments are not allowable expenses. Contributions a debtor makes to his 401(k) plan do not constitute funds necessary for support and, therefore, must be included in disposable income for the purpose of deciding the issue of substantial abuse. *In re Regan,* 269 B.R. 693, 697 (Bankr.W.D.Mo.2001). Disposable income is income received by the Debtor that is not reasonably necessary for the support of the debtor, his dependents, or his business. 11 U.S.C. § 1325(b)(2). The repayment of a loan from a 401(k) plan also must be included in disposable income. *In re Harshbarger,* 66 F.3d 775, 777 (6th Cir.1995).[2] When a person borrows from his own retirement account, it does not create a true loan, as it does not create a debt to a third party. *In re Guild,* 269 B.R. 470, 473 (Bankr.D.Mass. 2001). A 401(k) loan is a loan from oneself to oneself. "[T]here is no meaningful difference between 401(k) loan repayment and contribution." *Id.* There is an inherent unfairness in permitting a debtor to pay himself by funding his own retirement

---

**2.** Note that the funds already in an ERISA qualified 401k plan are excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). *In re Harshbarger,* 66 F.3d 775, 777 (6th Cir.1995).

account while paying creditors only a fraction of their just claims. *Harshbarger,* 66 F.3d at 777; *Guild,* 269 B.R. at 473.

▇ According to the Debtor schedules, the Debtor has a total monthly income of $3,305.00. Since filing his schedules, the Debtor has adjusted his number of claimed exemptions which will reduce his monthly income by $130.00. Because the Court finds that the Debtor is not entitled take a payroll deduction for his 401(k) contribution of $262.00 and 401(k) loan repayment of $237.00, the Debtor's monthly income will rise by those amounts. After making the noted adjustments the Debtor's total monthly income totals $3,674.00. According to the Debtor's schedules, the Debtor's monthly expenditures are $3,456.00. This leaves the Debtor with $218.00 per month of income over expenditures. If the Debtor were to enter into a three-year chapter 13 plan, the Debtor would have $7,848.00 available to pay unsecured creditors. The Debtor has no priority debt and has a total unsecured debt of $83,602.00, comprised of $36,150.00 for student loan debt and $47,452.00 for other unsecured debt. Unsecured creditors would receive a dividend of 9%.

Using a totality of the circumstances test, the Court finds that the Debtor's filing of this Chapter 7 case does not constitute substantial abuse. The Court does not find that the Debtor has acted dishonestly and finds that the Debtor is, in fact, needy. *See, Krohn,* 886 F.2d at 126. The Debtor's financial problems resulted from the unexpected loss of his job in December 2001. As a result of this job loss, the Debtor took a second mortgage on his home, used cash advances from his credit card to meet current expenses, and was unable to make payments on his outstanding credit card debt. When Debtor finally regained employment, the Debtor and his attorney determined that his expenses exceeded his income and prevented his unsecured creditors from receiving a reasonable dividend in a chapter 13, especially in light of the insecure nature of his current job in the automotive industry. While a 9% dividend to creditors is not insubstantial, it assumes that the Debtor will continue to be employed at his current salary. The Debtor's testimony that he had concerns about his future employment was credible, especially given his lack of seniority. It also appears from the Debtor's testimony that the Debtor, employed in his current job since July 2002, attempted to avoid bankruptcy for almost a year prior to filing. The Debtor filed for bankruptcy in May of 2003 only after it had become clear to him that he could not pay his bills. As the Bankruptcy Court for the Central District of Illinois stated in *In re Hammer,* 124 B.R. 287, 289 (1991):

> There is nothing in the facts of this case which shocks the conscience of this Court in the context of contravening the fundamental notions of fairness and the provisions of Chapter 7. The Debtor is a working man who fell behind in his ability to pay his creditors when he was laid off from work and who upon return to work opted for a fresh start by filing a Chapter 7 proceeding.

Although this Court is denying the United States Trustee's motion to dismiss, the Court applauds the United States Trustee's efforts in policing the Chapter 7 cases filed in this Court for substantial abuse. The Court wishes to emphasize the importance of the United States Trustee's work in maintaining a bankruptcy system which aids those truly in need of relief while attempting to deny relief to those set out to take advantage of the system. Even though, in this case, the Court finds that substantial abuse is not present, the Court encourages the United States Trustee to

continue monitoring the cases coming before this Court for substantial abuse.

## III.

### CONCLUSION

For the reasons set forth above, this Court DENIES the United States Trustee filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) for substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code.