*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 06b0015n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: RANDALL J. HAKE and
MARY ANN HAKE,

               Debtors.

_____

BUCKEYE RETIREMENT CO., L.L.C., LTD.,

    Appellant,

     v.

RANDALL J. HAKE and MARY ANN HAKE,

    Appellees.

_____

No. 06-8007

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
No. 04-41352.

Submitted: August 23, 2006

Decided and Filed: September 14, 2006

Before: AUG, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** F. Dean Armstrong, ARMSTRONG LAW FIRM, Flossmoor, Illinois, Terry J. Walrath, THE CADLE COMPANY, Newton Falls, Ohio, for Appellant. Mark A. Beatrice, Jerry R. Krzys, MANCHESTER, BENNETT, POWERS & ULLMAN, Youngstown, Ohio, for Appellees.

———————————

**OPINION**

———————————

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge. The bankruptcy court held that Buckeye Retirement Co., L.L.C., Ltd. ("Buckeye") violated Fed. R. Bankr. P. 9011(b) by filing, in the individual debtors' chapter 11 case, a motion for leave to file an adversary proceeding on behalf of the bankruptcy estate to recover monies contributed by the debtor Randall Hake to his 401(k) retirement account. As sanctions, the court ordered Buckeye to pay directly to the debtors' attorney the fees incurred in opposing the motion for leave. Buckeye appeals both the finding of the violation and the sanctions award. For the reasons that follow, the orders of the bankruptcy court are AFFIRMED.

## I. ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court abused its discretion in finding that Buckeye violated Rule 9011 and awarding sanctions against it that were payable to the debtors' attorney.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order, for the purpose of an appeal, is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). The bankruptcy court's order imposing sanctions on Buckeye for a violation of Fed. R. Bankr. P. 9011 was a final order. *Cf. In re Jeannette Corp.*, 832 F.2d 43, 46 (3rd Cir. 1987) (order imposing Rule 9011 sanctions only final upon assessment of counsel's fees and expenses).

2

"Bankruptcy courts' decisions regarding the imposition of sanctions [under Rule 9011] are reviewed under an abuse of discretion standard." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 711 (6th Cir. 1999). "An abuse of discretion occurs only when the [trial] court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *In re Downs*, 103 F.3d 472, 480-81 (6th Cir. 1996). "An abuse of discretion is defined as a 'definite and firm conviction that the [bankruptcy court] committed a clear error of judgment." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607-08 (6th Cir. 2000) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 770 (6th Cir.1999)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* at 608 (citations omitted).

## III.   FACTS

On March 25, 2004, Randall J. Hake and Mary Ann Hake filed for bankruptcy relief under chapter 11 of the Bankruptcy Code. Buckeye is the largest unsecured creditor in the debtors' case, with a pre-petition judgment against the debtors in excess of $1.8 million.

On August 24, 2005, while the debtors' chapter 11 case was pending, Victor O. Buente, Jr., general counsel for Buckeye, sent a letter to the debtors' counsel, Mark A. Beatrice, advising him that he had noticed in the debtors' July 2005 monthly operating report that the debtors had accrued or withheld $500 for a 401(k) contribution. Mr. Buente stated in the letter that the debtors had no authority to take this action and that such contributions were prohibited while their case was pending, citing and enclosing a copy of *In re Keating*, 298 B.R. 104 (Bankr. E.D. Mich. 2003). Mr. Buente requested that the debtors place the withheld funds in their bankruptcy operating account and cease any further 401(k) contributions. He also asked Mr. Beatrice to reply to this request by August 31, 2005, or he would bring the matter to the court's attention. (J.A. D).

On September 16, 2005, Mr. Buente sent a second letter to Mr. Beatrice indicating that the debtors had apparently disregarded his earlier request because the debtors' August 2005 monthly operating report stated that the debtors had accrued or withheld $1,500 for 401(k) deposits. Mr.

3

Buente asked Mr. Beatrice to reply by September 23, 2005, or the matter would be brought to the bankruptcy court's attention. (J.A. E). Mr. Beatrice responded to Mr. Buente in a letter dated September 16, 2005, wherein he indicated that the debtor Randall Hake had only recently become eligible to participate in the 401(k) retirement plan but "[i]n light of your comments regarding the same, . . . he has ceased making any further contributions since your letter." (J.A. F). In response, Mr. Buente sent a third letter to Mr. Beatrice on September 21, 2005, stating that Mr. Hake's cessation of further 401(k) contributions was "a step in the right direction" but that:

> [Mr. Hake] should also endeavor . . . to retrieve the contributions from the entity now holding them, as he had neither the right nor the privilege to make such contributions in the first place. His post-petition earnings are property of the estate under 11 U.S.C. § 1115(a)(2). Please advise if he will seek return of the $2,000 contributions reported on the operating reports. (J.A. G).

When the debtors made no further response to Buckeye's demands, Buckeye filed on October 28, 2005, a Motion For Leave Of Court To File Adversary Proceeding ("Motion For Leave"), requesting permission to file on behalf of the bankruptcy estate a turnover action against Mr. Hake and the custodian/trustee of his 401(k) retirement plan to recover the $2,500 in contributions. In a Memorandum filed in support of the Motion For Leave, Buckeye asserted that the debtors' post-petition earnings were property of their bankruptcy estate under 11 U.S.C. §§ 541(a)(7) and 1115(a)(2) and that the 401(k) contributions were subject to turnover under 11 U.S.C. § 542. Buckeye also maintained that the debtors had refused demands to bring the funds into the estate, citing Mr. Buente's letters to Mr. Beatrice, copies of which were attached. As in Mr. Buente's first letter to Mr. Beatrice, Buckeye also referenced *Keating*, noting that the court therein had concluded in ruling on the United States trustee's motion to dismiss for substantial abuse under 11 U.S.C. § 707(b) that the debtor's 401(k) contributions were not allowable expenses.

The debtors filed a memorandum in opposition to the Motion For Leave, stating that post-petition personal earnings of an individual chapter 11 debtor are not property of the estate under § 541(a)(6) which specifically excludes from the definition of property of the estate, "earnings from services performed by an individual debtor after the commencement of the case." They noted that while § 1115 does include post-petition earnings in the definition of property of a chapter 11 estate, the section was added in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

4

(Pub. L. 109-8) ("BAPCPA") and only applies to cases filed on or after October 17, 2005. The debtors distinguished the *Keating* decision cited by Buckeye, pointing out that it addressed allowable expenses for a chapter 13 debtor and that unlike the earnings of a chapter 11 debtor, the earnings of a chapter 13 debtor are expressly property of the estate under 11 U.S.C. § 1306.

At the hearing on November 16, 2005, the bankruptcy court indicated that it would deny the Motion For Leave, agreeing with the debtors that their post-petition earnings were not property of the estate. The court also observed that Buckeye had failed to set forth in the Motion For Leave why it should be permitted to bring an action on behalf of the estate, utilizing the standard espoused by the Sixth Circuit Court of Appeals in *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group)*, 66 F.3d 1436, 1438-39 (1995). The bankruptcy court found this failure to be inexplicable because it had recently advised Buckeye of the *Gibson Group* criteria in a memorandum opinion and order dated September 30, 2005, wherein the court dismissed another adversary proceeding that Buckeye had attempted to pursue on behalf of the Hake bankruptcy estate (*Buckeye Retirement Co. v. Hake*, No. 04-4189). The bankruptcy court noted that one element of the *Gibson Group* test which requires a cost/benefit analysis was especially critical in the instant case because only $2,000 of the $2,500 had been contributed by Mr. Hake—the rest had been contributed by his employer—and that any withdrawal from a 401(k) would likely involve taxation and penalties, thus producing the possibility of no benefit to the estate. Accordingly, the court concluded that denial of the Motion For Leave was warranted by Buckeye's failure to address the law governing derivative actions by a third party, even if *arguendo*, the debtors' post-petition earnings otherwise fell within the definition of property of the estate. The bankruptcy court's ruling in this regard was incorporated in an order entered November 23, 2005.

Two days after the hearing on the Motion For Leave, the bankruptcy court *sua sponte* entered an order pursuant to Fed. R. Bankr. P. 9011(c)(1)(B), directing Buckeye and its counsel to appear at a hearing on December 7, 2005, and show cause "why they should not be sanctioned for filing the Motion For Leave on the basis that it was filed in violation of Fed. R. Bankr. P. 9011(b)(1) and/or (2)." The only witness at the show cause hearing was Victor O. Buente, who testified that he had been a practicing attorney for 25 years and had worked for Buckeye and its affiliates for over 13

years. He also testified that prior to writing the first letter to the debtors' counsel regarding the 401(k) contributions, he had researched the legal issue "perhaps a full day, perhaps two full days," and that his research included the cases of *In re Herberman*, 122 B.R. 273 (Bankr. W.D. Texas 1990), and *In re Harp*, 166 B.R. 740 (Bankr. N.D. Ala. 1993). Mr. Buente further testified that prior to filing the Motion For Leave he had considered the *Gibson Group* factors and had the motion reviewed by Buckeye's outside counsel. Mr. Buente denied that there was an improper motive in filing the Motion For Leave or that it was filed for the purpose of harassment, delay or needlessly increasing the cost of litigation.

In an eleven-page order entered December 13, 2005, the bankruptcy court concluded that sanctions were appropriate and imposed sanctions "in the amount of Debtors' attorney's fees in responding to the Motion For Leave and appearing at the Hearing on such motion." The court directed the debtors' counsel to file an itemized statement of such fees and indicated that upon a review as to reasonableness it would enter a subsequent order regarding the amount of the sanctions. The order also included a specific finding that Mr. Buente was not credible with respect to his assertion that Buckeye had "(i) a good faith belief for its position in the Motion For Leave or (ii) a colorable claim in asserting that all of Debtor's post-petition earnings were property of the bankruptcy estate." The court noted that the only case authority provided by Mr. Buente to Mr. Beatrice in the letters was *Keating*, a dissimilar case, and that § 1115, cited in the Motion For Leave, was admittedly inapplicable to the case at hand. The court also rejected the assertion that the *Herberman* and *Harp* decisions provided the good faith basis for the motion, observing that these cases had not been previously cited and that both of them were distinguishable from the case at hand. According to the bankruptcy court, *Herberman* held that the post-petition income of a doctor's sole proprietorship fell within the definition of property of the estate under § 541(a)(7) but expressly noted in footnote 19 that the income of a debtor working for a third party is insulated from property of the estate because it is not the debtor's business being operated. As to *Harp*, the bankruptcy court explained that the case relied heavily on *Herberman* in concluding that the debtor/physician's post-petition income was property of the estate and that it adopted *Herberman's* "'well-reasoned and well-articulated' analysis, which presumably include[d] footnote 19."

The bankruptcy court also found in its order that Mr. Buente was not credible in stating that the Motion For Leave was not interposed for the purpose of harassment or delay. As stated by the court:

> Taking the case as a whole, the conduct of Buckeye Retirement amounts to harassment. So far in this case, Buckeye Retirement has (i) filed almost fifty (50) motions for Rule 2004 exams; (ii) objected to Debtors setting a bar date; (iii) objected to the extension of the Debtors' exclusivity period; (iv) sought the imposition of a Chapter 11 trustee; (v) filed duplicative claims; (vi) filed, without leave of this Court, adversary proceedings allegedly on behalf of the estate seeking to avoid allegedly fraudulent transfers; and (vii) objected to every fee application filed by counsel for the Debtors.

On January 20, 2006, the debtors' attorney filed an application for interim compensation in the amount of $952 for services rendered in opposing the Motion For Leave and a Notice Of Hearing on the application, setting a hearing date of February 15, 2007, and providing that any objections to the application must be filed by February 10, 2006. On February 8, 2006, prior to the scheduled hearing date and objection deadline, the bankruptcy court entered an order finding the requested fees reasonable and directing Buckeye to pay the debtors' counsel fees in the amount of $952. Buckeye timely appealed this order, the December 13, 2005 order finding the Rule 9011 violation, and the court's November 18, 2005 order to show cause.

## DISCUSSION

Federal Rule of Bankruptcy Procedure 9011(b) and (c) provides in pertinent part the following:

> (b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

7

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

. . . .

(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

According to the Sixth Circuit Court of Appeals, "the test for imposing Rule 9011 sanctions is whether the individual's conduct was reasonable under the circumstances." *In re Downs*, 103 F.3d 472, 481 (6th Cir. 1996). It has been held that Fed. R. Bankr. P. 9011(b) has both a subjective and objective component: the objective inquiry is set forth in paragraph (2) which questions whether the suit was filed after a reasonable investigation into the law and the facts; the subjective inquiry is

8

contained in paragraph (1) and requires a determination of why the movant filed the motion. *See In re Collins*, 250 B.R. 645, 661 (Bankr. N.D. Ill. 2000).

Buckeye argues in this appeal that the bankruptcy court abused its discretion in ruling that Buckeye violated Rule 9011(b)(1) and (2). Buckeye also asserts that because the court's show cause order only referenced the Motion For Leave, the bankruptcy court's consideration of Buckeye's previous conduct in the case was a denial of due process and a violation of Rule 9011(c)(1)(B)'s requirement that the show cause order describe the specific violative conduct. Buckeye also argues that the bankruptcy court exceeded its authority by imposing sanctions against Buckeye for a violation of Rule 9011(b)(2) and by making the sanctions payable directly to the debtors' counsel. Lastly, Buckeye maintains that the court erred by setting the sanction amount without giving Buckeye an opportunity to challenge that amount. Each of these arguments will be addressed in turn.

As set forth in its brief, Buckeye's first point of contention is that the bankruptcy court clearly erred in finding a violation of Rule 9011(b)(2), which provides that the filing of a document is a certification "formed after an inquiry reasonable under the circumstances," that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Buckeye asserts that there is a split of authority on the issue of whether an individual chapter 11 debtor's post-petition income is property of the estate and that its view is supported by a literal reading of § 541(a)(6) and the *Herberman* and *Harp* decisions. Buckeye observes that at the hearing on the Motion For Leave, the bankruptcy court itself acknowledged the conflict in the case law by stating, "I believe that the better reason[ed] cases find that earnings of the Debtor are not property of the bankruptcy estate and are not excepted by Section 541(a)(6), despite any tension that may exist [ ] between 541(a)(6) and 541(a)(7)." Buckeye also argues that the enactment of § 1115 by Congress was an implicit recognition that the cases which had concluded that a chapter 11 debtor's post-petition earnings were property of the estate were correct.

Section 541(a) of the Bankruptcy Code provides in pertinent part:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(6) Proceeds, products, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

From a reading of these provisions, it is evident that (a)(1) of § 541 includes in the estate the debtor's property interests existing as of the petition date, plus any interest that the *estate* acquires or is generated by the *estate* post-petition, including proceeds, products, offspring, rents, or profits, unless such proceeds, etc., are earnings from services performed by an individual debtor post-petition. *See* 11 U.S.C. § 541(a)(6) and (7); *In re Ballard*, 238 B.R. 610, 623 (Bankr. M.D. La. 1999). Because an individual debtor's post-petition earnings generally are not an interest that the debtor has as of the filing of the petition and because they are not otherwise proceeds, etc., of estate property, they are not property of the estate under a straight-forward reading of § 541(a). *Id.* at 620 ("Everyone knows that a debtor's post-petition wages, earnings, etc., . . . are not property of the estate."). Consistent with this reading, virtually every court that has considered this issue has held that the post-petition wages of an individual in chapter 11 are not property of the estate.[1] *See Roland v. Unum Life Ins. Co. of Am.*, 223 B.R. 499, 502 (E.D. Va. 1998), and cases cited in n.5. As explained by the district court in *Roland*, the only source of debate on this issue is sole proprietorships, with these cases "all address[ing] the problem of separating income derived from the business itself, which is in the estate, and income derived from the personal services of the debtor

---

[1] Under § 103(a) of the Bankruptcy Code, provisions of chapter 5 apply to chapter 11 cases so under pre-BAPCPA cases, § 541 is the sole definition provision for property of the estate in chapter 11 cases. The pre-BAPCAP version of chapter 11 had no corollary to chapter 13's § 1306 which expressly includes in the chapter 13 estate, "earnings from services performed by the debtor after the commencement of the case . . . ." *See* 11 U.S.C. § 1306(a)(2).

10

which is not in the estate." *Id*. at 502 n.4 (citing, *inter alia, In re Herberman*, 122 B.R. 273). The *Roland* court goes on to state:

> Despite [these cases'] differing approach to the sole proprietorship issue, it is important to note that all of these cases hold that income derived solely from personal services ('wages') are excluded from the estate by § 541(a)(6).
>
> . . . The sole exception is *In re Harp*, 166 B.R. 740 (Bankr. N.D. Ala. 1993), which found that all post-petition wage income was property of the estate. *Harp*, however, rests upon a mistaken reading of *Herberman*. *See Herberman*, 122 B.R. at 286, 287 n.19 (income from wage earners not working for the estate is not included in the estate); *see also In re Reed*, 184 B.R. 733 (Bankr. W.D. Tex. 1995) (Judge Clark clarifying that his reasoning in *Herberman* was only applicable to sole proprietorships, not individual wage earners); *In re Larson*, 147 B.R. 39, 43-44 (Bankr. D.N.D. 1992) (discussing limitations in applying *Herberman* to individual wage earners). *Harp's* interpretation of 541(a)(6), finding that all post-petition wages are property of the estate and therefore must be used to satisfy the claims of creditors, cannot be reconciled with the Supreme Court's statement in *Toibb v. Radloff*, 501 U.S. 157, 111 S. Ct. 2197, 115 L. Ed.2d 145 (1991) that "there is no . . . provision in Chapter 11 requiring a debtor to pay future wages to a creditor." *Id*. at 166, 111 S. Ct. at 2202. . . .

*Roland v. Unum Life Ins. Co. of Am.*, 223 B.R. at 502 n.4 and 5. *See also* Robert J. Keach, *Dead Man Filing Redux; Is the New Individual Chapter Eleven Unconstitutional?*, 13 Am. Bankr. Inst. L. Rev. 483, 484 (Winter 2005) ("While the 'earnings exception' of section 541(a)(6) has sometimes been construed more narrowly in sole proprietor chapter 11 cases, at a minimum, income directly attributable to post-petition services of the individual debtor is excluded from the chapter 11 estate.").

Applying this discussion to the facts of the instant case, it is evident that the bankruptcy court did not err in holding that the debtors' contributions to the 401(k) retirement plan, having been derived from Mr. Hake's post-petition wages, were not property of the estate, although the court's denial of the Motion For Leave is not before this court. Rather, the pertinent issue is whether Buckeye's filing of the Motion For Leave was warranted by existing law or by a nonfrivolous argument for a modification of existing law, formed after an inquiry reasonable under the circumstances. Contrary to the bankruptcy court's observation, the *Harp* decision does provide support for Buckeye's position that Mr. Hake's earnings were property of the estate, although plainly this case stands alone and appears to be inconsistent with the applicable provisions of the

11

Bankruptcy Code. However, the bankruptcy court's finding that Rule 9011(b)(2) had been violated was not based only on the lack of support for the property of the estate argument. Buckeye had also failed to directly address in its Motion For Leave the *Gibson Group* test that under Sixth Circuit precedent determines whether a party may bring a derivative action on behalf of the estate. While Buckeye asserted that the Motion For Leave set forth the facts necessary to apply three of the four *Gibson Group* factors and that counsel had considered the fourth factor, the cost/benefit analysis, prior to filing the motion, the bankruptcy court did not find counsel credible in this regard since the Motion For Leave did not reference *Gibson Group* even though the court had explicitly informed Buckeye of these requirements in a memorandum opinion entered in another adversary proceeding less than 30 days before Buckeye filed the Motion For Leave.

And, while the Rule 9011 determination generally turns on an objective inquiry, the lack of objective support for Buckeye's position was exacerbated by the court's determination that Mr. Buente was not credible in his assertion that he had a good faith belief in the legal position underlying the Motion For Leave. The court's finding in this regard is supported by the fact that neither the letters to Mr. Beatrice by Mr. Buente nor the Motion For Leave cited *Harp*; the only case referenced in the letters was *Keating* which provided no authority on the issue since it addressed requirements under chapter 13; and Mr. Buente also cited § 1115 as though it were controlling even though it only applies to cases commenced on or after October 17, 2005, which would exclude the present case. "A trial court's findings based on determinations regarding the credibility of witnesses are generally entitled to great deference." *Gaudiano v. C.I.R.*, 216 F.3d 524, 536 (6th Cir. 2000). When the entire record is considered, we are unable to conclude that the bankruptcy court clearly erred in its determination that Rule 9011(b)(2) had been violated. *See In re Am. Telecom Corp*, 319 B.R. 857, 872 (Bankr. N.D. Ill. 2004) ("If an attorney fails to conduct a reasonable legal inquiry, the rule has been violated even if he holds a good-faith belief that his client is entitled to relief under the law.").

Similarly, we find no abuse of discretion with regard to the bankruptcy court's ruling that Buckeye violated Rule 9011(b)(1) which prohibits a motion from being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

12

The same evidence which the bankruptcy court cited in its conclusion that Mr. Buente was not credible also supported its conclusion that the Motion For Leave was interposed for purposes of harassment. Furthermore, the court cited Buckeye's litigious conduct throughout the case which included filing almost 50 motions for Rule 2004 exams, filing actions purportedly on behalf of the estate without prior court approval, and even objecting to the imposition of a bar date.

Buckeye asserts that it was error for the bankruptcy court to consider its prior conduct in the case since the court's show cause order only referenced the Motion For Leave and Rule 9011(c)(1)(B), which pertains to sanctions imposed on the court's own initiative, clearly requires the order to describe the specific conduct that appears sanctionable. However, Buckeye was not sanctioned for its previous conduct in the case; the court merely evaluated Buckeye's entire pattern of filings in the case in order to properly determine if Buckeye's motive in filing the Motion For Leave was to harass the debtors. *See, e.g., In re KTMA Acquisition Corp.*, 153 B.R. 238, 266 (Bankr. D. Minn.1993) (conduct is harassing when objectively it persistently irritates or torments the other party and in making determination of whether filing violates Rule 9011(b)(1), court should consider whether there is some motive to harass). Moreover, Buckeye was expressly put on notice of the potential for sanctions in this regard by the bankruptcy court's show cause order referencing Rule 9011(b)(1). Accordingly, the bankruptcy court's consideration of Buckeye's prior filings was not inappropriate.

Buckeye also argues that the bankruptcy court exceeded its authority by imposing sanctions against it for a violation of Rule 9011(b)(2). In this regard, Buckeye is correct that Rule 9011(c)(2)(A) provides that "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." However, the bankruptcy court found not only a violation of subdivision (b)(2) in this case but also a violation of subdivision (b)(1) for which sanctions may be assessed against a represented party. There is no indication in the present case that the bankruptcy court imposed separate sanctions for each violation or otherwise assessed sanctions against Buckeye for an amount greater than if just one violation had occurred. As such, we find no improper application of the law.

As to the assertion that it was error for the court to order Buckeye to pay the sanctions directly to the debtors' counsel, Buckeye relies on the sentence in subdivision (c)(2) of Rule 9011which provides that "the sanction may consist of, . . . if imposed on motion . . . , an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Buckeye maintains that under this provision the court could only award payment of attorney fees if the sanction action had been initiated by a party on motion. However, this Panel has recognized that notwithstanding this language, bankruptcy courts have the inherent power to impose sanctions on a scope broader than that of Bankruptcy Rule 9011, including monetary sanctions, and that under similar facts, the bankruptcy court did not err in awarding attorneys fees on a Rule 9011 matter raised on the court's own initiative. *Knowles Bldg. Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 203 (B.A.P. 6th Cir. 2001). We reaffirm that conclusion today and likewise find no error.

The last issue raised by Buckeye is that the bankruptcy court erred in not holding a hearing on the amount of the sanction imposed. Buckeye contends that it was prepared to object to the requested fees because they included time for services unrelated to opposing the Motion For Leave. Regardless of the validity of Buckeye's objection, while it is regrettable that a hearing and objection deadline were set on the amount of sanctions and no hearing was held, the Sixth Circuit Court of Appeals has observed that a trial court is entitled to "wide discretion" in determining the amount of sanctions to impose. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368 (6th Cir. 1996). As noted by the debtors, it has been recognized that in the exercise of this discretion, it is not necessary for a court familiar with the objectionable conduct to hear evidence on the appropriateness of a sanction. *See Ordower v. Feldman*, 826 F.2d 1569, 1575-76 (7th Cir. 1987) (judge familiar with proceedings did not abuse his discretion by awarding $1,000 sanction without first hearing evidence of attorney's fees). *See also Union Planters Bank v. L & J. Dev. Co.*, 115 F.3d 378, 385 (6th Cir. 1997) (imposition of sanctions without a full evidentiary hearing did not violate due process) (citing *In re Big Rapids Mall Assocs.*, 98 F.3d 926, 929 (6th Cir. 1996) (recognizing that an evidentiary hearing is "not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys."); *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 405 (6th Cir. 1987) (explaining that "no hearing is required where an attorney is sanctioned for

filing frivolous motions ungrounded in law or fact, and where the judge imposing sanctions has participated in the proceedings.")).

The amount of sanctions awarded in this case was nominal, only $952. Based upon a review of the entire record in this case, we are unable to conclude that the amount awarded was so unreasonable, even if it included unrelated services, as to constitute an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court are AFFIRMED.