**In the Matter of John K. BENDER and Debra A. Bender, Debtors.**

**No. 06–55857–MBM.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 5, 2007.

Gregory T. Osment, Monroe, MI, for Debtors.

### OPINION GRANTING TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(3)

MARCI B. McIVOR, Bankruptcy Judge.

This matter is before the Court on the Trustee's Motion to Dismiss Pursuant to

11 U.S.C. § 707(b)(3). A hearing was held on August 14, 2007 and, at the close of proofs, the matter was taken under advisement. Having fully considered the facts and the law, and for the reasons stated in this Opinion, the Trustee's Motion is granted.

*Facts*

Debtors John and Debra Bender filed a voluntary Chapter 7 bankruptcy on October 10, 2006. The stipulated facts (Docket # 56) indicate that Mr. Bender retired from Ford Motor Company in November 2005, and receives social security benefits. Mrs. Bender is a long-time employee of Mercy Memorial Hospital in Monroe, Michigan. Debtors have a combined annual gross income of $72,111.24. Amended Schedules I and J disclose net monthly income of $4,461.32 and monthly expenses of $4,455.71, leaving a net surplus of $5.61. Amended Schedule E discloses $8,532.51 in unsecured priority claims (state and federal income taxes). Schedule F indicates that Debtors have $92,754.47 in unsecured nonpriority claims (including a $46,300 deficiency balance from a mobile home repossessed in 2000). In addition, Debtors have outstanding deficiencies on other real and personal property.[1]

Debtors attribute the beginning of their financial difficulties to the acquisition of property on Patterson Street in Monroe Michigan in 2001. They made improvements to the property expecting that their daughter and her husband would be residing with them and paying rent. There were construction difficulties, and for various reasons, their daughter did not move in with them. The property was foreclosed upon in November, 2006, giving rise to a deficiency balance of $37,754.[2] In September, 2002, Mr. Bender voluntarily signed vehicle loans on behalf of several members of his church (members whose individual credit worthiness, it appears, did not independently support the debt). The church members did not make timely loan payments, and Mr. Bender did not have the financial wherewithal to make the payments himself. The vehicles were repossessed, resulting in significant deficiency balances owed by Mr. Bender.[3]

Expenses (as disclosed on Amended Schedule J) of particular concern to the Trustee in the present Motion are: (1) charitable contributions to Debtors' church of $620 per month[4], (2) Mrs. Bender's 401k plan contribution and 401k loan repayment of $186 and $90, respectively, per month and, (3) food and restaurant expenses of $640 per month ($500 for food and $160 for "work lunches"). The Trustee also notes certain other expenses listed on Schedule J that are not, presently, expenses: $90 per month for a land line phone which Debtors do not have, and $284.50 for life insurance which Debtors have yet to obtain.

The Trustee also raises concerns over a $3,000 loan obtained post-petition from a friend, to make a down payment on the mobile home in which Debtors presently reside. While no payments have been

---

1. This includes deficiency balances on several vehicles and a duplex at 520 Smith Street, Monroe, Michigan

2. According to the parties' stipulated facts, the deficiency balance on the Patterson Street property is $37,754. Schedule F lists the balance as $46,300.32.

3. In addition to the deficiency balances, Mr. Bender owes $540 in unpaid parking obligations incurred by the drivers of those cars.

4. Over the past three years, Debtors' charitable contributions have been approximately $260 per month. They would like to contribute $620 per month on an ongoing basis. Debtors did, in fact, contribute $620 per month in both June and July, 2007.

made on that debt, Debtors have agreed to repay the friend $200 per month, and have listed the proposed payment as an expense on Schedule J.

The Trustee brings the present Motion to Dismiss, arguing that Debtors have sufficient income to fund a Chapter 13 plan based on actual present expenses (if Debtors limit charitable contributions to historic amounts and otherwise tighten their fiscal belts). The Trustee also argues that, by continuing to incur debt post-petition, Debtors have placed their "fresh start" (the primary purpose of the bankruptcy process) at risk, rendering a chapter 7 discharge inappropriate.

Debtors contend that they do not have sufficient income to fund a Chapter 13 plan. They note that they have to use "payday" loans to pay routine household expenses such as utilities and food.[5]

### Analysis

■ 11 U.S.C. § 707(b)(3) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (A)(1) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

■ Pre–BAPCPA, § 707(b) permitted dismissal of a debtor's case on a showing of "substantial abuse". BAPCPA replaced the "substantial abuse" standard with mere "abuse" and removed the presumption in favor of granting the relief requested by the debtor. This Court has held that the standard used for evaluating abuse under 11 U.S.C. § 707(b) is still applicable under 11 U.S.C. § 707(b)(3). Notwithstanding the change in language, both acts require the Court to evaluate abuse under the totality of the circumstances. *See, In re McIvor*, 2006 WL 3949172 (E.D.Mich. Nov. 15, 2006). The Sixth Circuit has stated that abuse could be shown either 1) where the debtor has acted dishonestly, or 2) where the debtor is not needy, i.e. his financial situation does not warrant a discharge in exchange for the liquidation of his assets. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *accord, In re Behlke*, 358 F.3d 429 (6th Cir.2004).

■ In determining whether a debtor is acting honestly, the court should examine whether the debtor made substantial eve of bankruptcy purchases, was dishonest in filing his bankruptcy schedules and other court documents, and whether the bankruptcy was necessitated by unforeseen or catastrophic events. *Krohn*, 886 F.2d at 126.

■ In determining whether a debtor is needy, the court should decide whether the debtor could pay his debts out of future earnings, i.e., whether the debtor could fund a hypothetical Chapter 13 plan. This factor alone may compel a dismissal of the case. *Id.* Other factors which may show neediness, or a lack thereof, include:

1) whether the debtor enjoys a stable source of income;

2) whether he is eligible for adjustment of his debts through Chapter 13;

---

**5.** A payday loan is a bi-weekly loan through which Debtors borrow $600 and repay $676.45 two weeks later.

3) whether there are state remedies with the potential to ease his financial problems;

4) the degree of relief obtainable through private negotiations; and

5) whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities.

*Id.* at 126–27. A debtor is not "needy" if he can trim an exorbitant budget to fund a Chapter 13 plan. *See, e.g., In re Ploegert,* 93 B.R. 641, 642–43 (Bankr.N.D.Ind.1988) (debtor earned $13 per hour and had $20,000 in unsecured consumer debts; debtor listed $840 per month for recreation, including weekend trips).

In the present case, the Trustee does not contend that Debtors have acted, in any way, dishonestly. Rather, the Trustee believes that if certain expenses are reduced or eliminated, Debtors have sufficient income to fund a Chapter 13 plan and are not needy. In order to determine whether Debtors in the present case are needy, the Court must first determine whether certain expenses claimed by Debtors on Amended Schedule J, but challenged by the Trustee, are permissible in considering a motion to dismiss under § 707(b).

*Charitable Contributions*

[7] 11 U.S.C. § 707(b)(1) states in part:

In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

A straightforward reading of § 707(b)(1) precludes the Court from considering past or continuing contributions to charitable organizations in the context of a § 707 dismissal. As explained by *Collier on Bankruptcy,* "[t]he legislative history of the provision indicates that Congress meant to emphatically reject cases that had dismissed chapter 7 petitions based on a debtor's continued charitable contributions." 6 *Collier on Bankruptcy* ¶ 707.04[4][a](15th ed.2007). Thus, assuming that the organizations to which Debtors contribute qualify as religious or charitable entities under § 548(d)(4), the Court cannot consider Debtors' $260 monthly contribution, a contribution which began at least three years prior to the petition date and proposes to continue post-petition, in determining whether the case should be dismissed. What is less clear, however, is whether the Court can consider the $360 per month post-petition increase reflected on Amended Schedule J.

While no case law was located addressing this issue, the Court finds that the statute is quite specific as to protected contributions—those that a debtor "has made, or continues to make"—not amounts which are voluntarily added into a debtor's budget post-petition. Post-petition increases in contributions are logically characterized as "new" contributions rather than a continuation of prior contributions. To conclude otherwise invites Chapter 7 debtors to propose a dramatic increase in charitable giving post-bankruptcy in an effort to consciously avoid qualifying as a Chapter 13 debtor. Section 707(b)(1) expressly protects a debtor's charitable contributions from consideration as a ground for dismissal when a debtor has an established pattern of giving to a qualified charity. However, nothing in the statute can be construed to permit a debtor to suddenly become substantially more charitable after filing for bankruptcy, especially when it is the increased charitable contributions that deprive the debtor of the income

which could fund a hypothetical Chapter 13 plan. The Court notes that it evaluates Debtors' schedules as of the date of the filing of a petition. While Debtors frequently amend their schedules to more accurately reflect income or expenses (e.g. a debtor loses overtime so income decreases, expenses increase due to an adjustable rate mortgage), nothing in the Code allows a debtor to include post-petition expenses on Schedule J—particularly expenses which a debtor has voluntarily chosen to add on to his budget after filing for bankruptcy.

For these reasons, the Court finds that for purposes of determining whether the petition should be dismissed under § 707(b)(1), the proposed $360 per month post-petition increase in charitable contributions should be treated as income available to pay pre-petition creditors.

*401(k) Loan Repayments and Contributions*

■ Although it is well established that 401(k) loan repayments and voluntary contributions cannot be considered disposable income in a chapter 13 case (11 U.S.C. § 1322(f)), the repayment of such loans and contributions should be taken into consideration when assessing a debtor's ability to repay his debts. *In re Barraza*, 346 B.R. 724, 730–32 (Bankr.N.D.Tex.2006). *See also, In re Zaporski*, 366 B.R. 758, 771 (Bankr.E.D.Mich.2007); *In re Vansickel*, 309 B.R. 189, 203 (Bankr.E.D.Va.2004) (finding that the Debtor's 401(k) contributions to himself at the expense of creditors was unreasonable and excessive; the court stated, "In the context of a 707(b) determination, such payments must be treated as disposable, available income for purposes of evaluating whether the debtor has the ability to repay his creditors.") "There is an inherent unfairness in permitting a debtor to pay himself by funding his own retirement account while paying creditors only a fraction of their just claims." *In re Keating*, 298 B.R. 104, 110–11 (Bankr.E.D.Mich.2003)(citing *In re Harshbarger*, 66 F.3d 775, 778 (6th Cir.1995)).

■ Furthermore, when determining if a debtor is able to pay his debts, "the Court must consider his actual and anticipated financial situation over the applicable Chapter 13 commitment period." *In re Lenton*, 358 B.R. 651, 664 (Bankr.E.D.Pa.2006); *see also, In re Richie*, 353 B.R. 569, 575–76 (Bankr.E.D.Wis.2006). Thus, the Court should consider the amount dedicated to the repayment of a 401(k) loan if the loan will be paid off within the period of a hypothetical Chapter 13 plan. *Id.* Once in a Chapter 13, the debtor can either choose to not make payments on the loan or propose a small dividend to unsecured creditors initially and a larger payment after the loan is repaid.

Applying these cases to the facts at bar, the Court finds that for purposes of determining whether the petition should be dismissed under § 707(b)(1), Mrs. Bender's $186.10 monthly 401(k) contribution and the $90 per month 401(k) loan repayment must be treated as income available to pay pre-petition creditors.

*Totality of the Circumstances*

As noted earlier, in determining whether a case should be dismissed under § 707(b)(3), based on the totality of the circumstances, the Court must look to the factors set forth in *Krohn*. In the present case, Debtors satisfy several of the factors: they have a stable source of income, they are eligible for relief under Chapter 13, and they can significantly reduce expenses without depriving themselves of adequate food, clothing, shelter and other necessities.

As previously discussed, Debtors have an additional $360 available to creditors

which they sought to divert to charitable organizations, as well as $270.10 related to the 401(k) account.[6] After closely reviewing Debtors' Amended Schedule J, the Court agrees with the Trustee that other expenses can be reduced in an effort to fund a Chapter 13 plan. These include food, non-existent phone and insurance expenses, expenses related to payday loans, and the repayment of a post-petition loan from a friend. Under the *Krohn* standard, Debtors have the ability to tighten their belts and make a significant contribution toward their unsecured debts.

Rather than tightening their belts, these Debtors have added to their expenses while in bankruptcy. Debtors borrowed $3,000.00 from a friend and committed to repaying the loan at the rate of $200.00 per month. Rather than cutting food expenses, Debtors eat many of their meals in restaurants. Mrs. Bender takes out payday loans in an effort to "make ends meet", notwithstanding the fact that Debtors have gross annual income of $72,111.24. A serious effort to cut expenses and re-direct other expenses would result in monthly income sufficient to fund a chapter 13 plan.

*Conclusion*

For the foregoing reasons, the Court concludes that under *Krohn's* totality of the circumstances test, Debtors are not needy and have sufficient income to fund a Chapter 13 plan. The Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) is therefore granted. The Court will not enter the Order of Dismissal for fourteen days from the date of this Opinion in order to give the Debtors an opportunity to convert their case to a Chapter 13 proceeding. In the event Debtors do not convert their

case, the Trustee shall submit an Order of Dismissal.

---

6. The Court recognizes that the amounts available from the 401(k) contribution and loan do not translate dollar for dollar as money available for unsecured creditors. There are tax implications to the Debtors. Nevertheless, there will be some amount of money freed up from the 401(k) payments and contributions for unsecured creditors.