RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

IN RE: CAMILLE T. DAVIS,

*Debtor.*

─────────────────────────────────────

CAMILLE T. DAVIS,

*Appellant,*

*v.*

LAUREN A. HELBLING, Chapter 13 Trustee,

*Appellee.*

⎫
⎪
⎪
⎪
⎬ No. 19-3117
⎪
⎪
⎪
⎭

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.
No. 1:17-bk-12965—Arthur I. Harris, Judge.

Argued:  August 8, 2019

Decided and Filed:  June 1, 2020

Before:  CLAY, LARSEN, and READLER, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Eugene R. Wedoff, Oak Park, Illinois, for Appellant.  Philip D. Lamos, OFFICE OF THE CHAPTER 13 TRUSTEE, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Eugene R. Wedoff, Oak Park, Illinois, Joseph M. Romano, Cleveland, Ohio, for Appellant.  Philip D. Lamos, OFFICE OF THE CHAPTER 13 TRUSTEE, Cleveland, Ohio, for Appellee.

LARSEN, J., delivered the opinion of the court in which CLAY, J., joined.  READLER, J. (pp. 16–28), delivered a separate dissenting opinion.

---

**OPINION**

---

LARSEN, Circuit Judge.    Camille Davis filed for bankruptcy.    Chapter 13 of the Bankruptcy Code allows her to satisfy her unsecured debts by paying all of her "projected disposable income" to her unsecured creditors over a five-year period.    Davis believes that the wages she contributes to her employer-sponsored retirement plan are not considered disposable income under the Code.    The bankruptcy court disagreed.    Because we conclude that the statutory text is best read to exclude voluntary retirement contributions from disposable income, we VACATE the bankruptcy court's order and REMAND for further proceedings.

I.

In 2017, Davis filed a petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio.    She had more than $200,000 in debt and fewer than $39,000 in assets.    The vast majority of Davis's debt—more than $189,000—was unsecured.    Unsecured creditors lack recourse to any interest in collateralized property.    *See* 11 U.S.C. § 506(a).    Chapter 13 allows Davis to satisfy her unsecured debts by paying all her disposable income to her unsecured creditors during a sixty-month commitment period.    *See id.* §§ 1321–1328.

Davis proposed a bankruptcy plan that would pay her unsecured creditors a total of $19,380—equal to sixty monthly payments of $323.    To obtain court approval, her plan needed to provide for payment of all her "projected disposable income" to her unsecured creditors.    *Id.* § 1325(b)(1).    Davis believed that $323 represented her monthly disposable income.    Although she reported gross monthly income of $5,627, she claimed $5,304 in allowable monthly expenses.    One of those claimed expenses was a monthly retirement contribution.    Long before her bankruptcy, Davis had authorized her employer to withhold $220.66 from her monthly wages

as contributions to a 401(k) retirement plan.[1]  Davis sought to continue those contributions during her bankruptcy.

The Trustee objected to Davis's plan.  The Trustee contended that wages withheld as voluntary 401(k) contributions are considered disposable income under the Code; as a result, Davis's proposed plan would not pay all her projected disposable income to her unsecured creditors.  The bankruptcy court sustained the Trustee's objection.  In doing so, the court noted that it felt bound by dictum found in this court's decision in *Seafort v. Burden* (*In re Seafort*), 669 F.3d 662, 674 n.7 (6th Cir. 2012), which suggested that the Code always counts voluntary retirement contributions as disposable income, even if the debtor began making those contributions prior to bankruptcy.  The bankruptcy court elaborated:

> While I don't necessarily agree with the *Seafor*[*t*] analysis, it is the analysis of the Sixth Circuit.  I agree with [Davis's] attorney that it is dicta, but . . . it's a very strong direction from the Sixth Circuit . . . . So what I've done in the six years or so since the *Seafor*[*t*] case came out is to say I'm going to follow [it] . . . until someone tells me that it's no longer the law of the circuit.  And I'm happy if a party wants to take the issue up to certify it for direct appeal to the circuit.

Transcript of Confirmation Hearing at 4–6, *In re Davis*, No. 17-12965 (Bankr. N.D. Ohio May 24, 2018).

As a result of the bankruptcy court's decision, Davis filed an amended bankruptcy plan that would pay her unsecured creditors $519 each month.  The increase reflected, in part, the addition of Davis's monthly 401(k) contributions to her disposable-income calculation.  Davis then objected to her own plan, preserving the disposable income issue for appellate review.  *See Lindsey v. Pinnacle Nat'l Bank* (*In re Lindsey*), 726 F.3d 857, 860 (6th Cir. 2013) (noting that a debtor can "appeal a confirmed plan with which [s]he disagrees").  The bankruptcy court confirmed the amended plan over Davis's objection.  Davis then obtained a certification from the bankruptcy court authorizing a direct appeal to this court.  This appeal followed.

---

[1]Davis's bankruptcy filings are inconsistent regarding the exact amount of her monthly 401(k) contributions.  In her initial petition, she listed $226.96 as her monthly contribution amount, yet she only claimed $220.66 in "qualified retirement deductions" when calculating her disposable income.  Because Davis's proposed bankruptcy plan relied on the $220.66 amount, we use that amount here.

II.

We begin with the legal background.  Section 1325(b)(1) of the Code provides that, upon objection, a bankruptcy plan cannot be approved "unless . . . [it] provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors."  11 U.S.C. § 1325(b)(1)(B).  Section 1325(b)(2) defines "disposable income" as the debtor's "current monthly income . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor." *Id.* § 1325(b)(2)(A)(i).  For debtors with above-median income, like Davis, the "amounts reasonably necessary to be expended" are determined by the National and Local Standards promulgated by the IRS.  *See id.* § 1325(b)(3).  "Projected disposable income," as used in § 1325(b)(1), is not defined anywhere in the Bankruptcy Code.  But the Supreme Court has held that it is simply the debtor's disposable income, under § 1325(b)(2), adjusted for any "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, 560 U.S. 505, 524 (2010).

Determining a debtor's "projected disposable income" under § 1325(b)(1) is therefore a two-step process.  *See id.* at 519, 524.  First, the debtor's current "disposable income" is determined by the formula prescribed in § 1325(b)(2).  *Id.* at 519.  Second, in certain circumstances, that sum is adjusted for changes "known or virtually certain" to occur during the commitment period.  *Id.*  When a debtor expects no changes in financial circumstances, as "in most cases," her "projected disposable income" under § 1325(b)(1) is simply her "disposable income" as defined in § 1235(b)(2).  *Id.*

Before 2005, the "overwhelming consensus" among bankruptcy courts was that wages voluntarily withheld as 401(k) contributions formed part of a debtor's disposable income.  *In re Johnson*, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999); *see, e.g.*, *In re Austin*, 299 B.R. 482, 486–87 (Bankr. E.D. Tenn. 2003); *In re Keating*, 298 B.R. 104, 110 (Bankr. E.D. Mich. 2003); *In re Regan*, 269 B.R. 693, 696–97 (Bankr. W.D. Mo. 2001); *In re Merrill*, 255 B.R. 320, 323–24 (Bankr. D. Or. 2000); *In re Cox*, 249 B.R. 29, 32 (Bankr. N.D. Fla. 2000); *In re Cohen*, 246 B.R. 658, 666–67 (Bankr. D. Colo. 2000); *In re Hansen*, 244 B.R. 799, 802 (Bankr. N.D. Ill. 2000);

*see also Anes v. Dehart* (*In re Anes*), 195 F.3d 177, 180–81 (3d Cir. 1999); *Harshbarger v. Pees* (*In re Harshbarger*), 66 F.3d 775, 777 (6th Cir. 1995).

In 2005, however, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23.  BAPCPA amended the Bankruptcy Code and added 11 U.S.C. § 541(b)(7).  In relevant part, § 541(b)(7)(A) provides:

> (b) Property of the estate does not include—
>
>> (7) any amount—
>>
>>> (A) withheld by an employer from the wages of employees for payment as contributions—
>>>
>>>> (i) to—
>>>>
>>>>> (I) [a 401(k) retirement plan]
>>>>
>>>> *except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2).*

11 U.S.C. § 541(b)(7)(A) (emphasis added).  The emphasized portion is known as the "hanging paragraph."  Its meaning has led to considerable disagreement among courts and litigants nationwide.  Here, Davis argues that the hanging paragraph excludes 401(k) contributions from disposable income for purposes of § 1325(b)(2).

Most courts agree with Davis.  *See RESFL FIVE, LLC v. Ulysse*, No. 16-CV-62900, 2017 WL 4348897, at *6 (S.D. Fla. Sept. 29, 2017) (collecting cases).  The leading decision is *Baxter v. Johnson* (*In re Johnson*), 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).  There, the court concluded that the hanging paragraph "plainly state[s] that [401(k)] contributions 'shall not constitute disposable income.'"  *Id.* (quoting 11 U.S.C. § 541(b)(7)).  In its view, BAPCPA "placed retirement contributions outside the purview of a Chapter 13 plan."  *Id.*  Thus, *Johnson* held that a debtor's disposable income does not include the wages she contributes to her 401(k) plan—whether or not those contributions began prior to bankruptcy.  *Id.*

Without deciding the precise question before us today, this court squarely rejected *Johnson*'s reasoning in *Seafort*, 669 F.3d at 674.  The debtor in *Seafort* was in the midst of repaying a 401(k) loan.  *Id.*  Payments made toward 401(k) loans are explicitly excluded from disposable income under 11 U.S.C. § 1322(f).  But the debtor was scheduled to finish repaying

her 401(k) loan during the commitment period, and she wished to use that newly available income to *begin* making 401(k) contributions. *Id.* We rejected her claim, concluding that "the *Johnson* line of cases [was] not persuasive." *Id.* at 673. Instead, we held that "post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected disposable income'" under § 1325(b)(1). *Id.* at 663.

*Seafort* also opined, in dictum, on the circumstances present here. The trustee in *Seafort* had conceded that if the debtor had regularly made 401(k) contributions prior to filing her petition, she could have excluded those wages from her projected disposable income. *See id.* at 674 n.7. This court disagreed, endorsing a competing interpretation of the hanging paragraph adopted by *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010), which held that a Chapter 13 debtor may never deduct "voluntary post-petition retirement contributions in any amount regardless of whether the debtor [made] pre-petition retirement contributions." *Seafort*, 669 F.3d at 667, 674 n.7. But we acknowledged that the "issue [was] not presently before us." *Id.* at 674 n.7.

Other courts have adopted *Prigge*'s interpretation as a holding. *See, e.g.*, *Parks v. Drummond* (*In re Parks*), 475 B.R. 703, 709 (9th Cir. B.A.P. 2012); *In re McCullers*, 451 B.R. 498, 504 (Bankr. N.D. Cal. 2011). That interpretation focuses on the hanging paragraph's location within § 541. *See Parks*, 475 B.R. at 708. Section 541 defines the contours of the bankruptcy estate—a concept that deals primarily with pre-petition assets. Drawing clues from that context, the *Prigge* interpretation construes the hanging paragraph to reach only pre-petition assets. *See id.*; *McCullers*, 451 B.R. at 504–05; *Prigge*, 441 B.R. at 677 n.5. In effect, this interpretation reads the hanging paragraph as excluding from disposable income under § 1325(b)(2) only accumulated 401(k) savings—rather than an ongoing contribution amount. *See Parks*, 475 B.R. at 708; *McCullers*, 451 B.R. at 504–05; *see also Prigge*, 441 B.R. at 677 n.5. Thus, a debtor who had contributed $100 to her 401(k) each month in the year before her bankruptcy could exclude from her disposable income the $1,200 that she had accumulated in her 401(k) account (to the extent the Code would even consider those retirement savings as disposable income), but not the $100 contribution withheld from her wages each month following the confirmation of her plan. *See Parks*, 475 B.R. at 708.

Other courts have adopted yet two more interpretations. First, several courts have followed the reasoning of our Bankruptcy Appellate Panel (BAP) in *Seafort*, 437 B.R. 204, 210 (B.A.P. 6th Cir. 2010). *See, e.g.*, *In re Thompson*, No. 17-02877-JCO, 2018 WL 1320171, at *2 (Bankr. S.D. Ala. 2018); *In re Read*, 515 B.R. 586, 590 (Bankr. E.D. Wis. 2014); *In re Jensen*, 496 B.R. 615, 621 (Bankr. D. Utah 2013); *In re Noll*, No. 10-35209-SVK, 2010 WL 5336916, at *2 (Bankr. E.D. Wis. 2010). That interpretation—which we will refer to as "*Seafort*-BAP"— also focuses on the hanging paragraph's placement in § 541. *See Seafort*, 437 B.R. at 210. Unlike *Prigge*, however, *Seafort*-BAP construes the hanging paragraph to exclude the debtor's pre-petition contribution *amount*—rather than merely her accumulated savings—from her disposable income under § 1325(b)(2). *Id.* Under this interpretation, a debtor may deduct 401(k) contributions from her disposable income if she made an equal or greater monthly contribution prior to her bankruptcy. *Id.* That means that the hypothetical debtor above could exclude from her disposable income the $100 401(k) contribution withheld from her wages each month, but a debtor who waited until after bankruptcy to begin making those contributions could not do the same. *See id.*

Second, at least one court has adopted a modified version of *Seafort*-BAP. *See In re Anh-Thu Thi Vu*, 2015 WL 6684227, at *4 (Bankr. W.D. Wash. 2015); *In re Bruce*, 484 B.R. 387, 394 (Bankr. W.D. Wash. 2012). This approach—known as the "CMI interpretation"—mirrors *Seafort*-BAP's focus on pre-petition contributions but offers slightly different mechanics. *See Anh-Thu Thi Vu*, 2015 WL 6684227, at *4. The CMI interpretation construes the hanging paragraph as excluding the debtor's pre-petition contributions from the calculation of her "current monthly income"—a subcomponent of § 1325(b)(2)'s disposable-income calculation. *Id.* A debtor's current monthly income is defined as her average income over the six months preceding bankruptcy. 11 U.S.C. § 101(10A). The CMI interpretation therefore allows a debtor to deduct from her disposable income the average amount she contributed to her 401(k) each month in the six months preceding her bankruptcy. *Anh-Thu Thi Vu*, 2015 WL 6684227, at *4– 5. In most situations, this interpretation and *Seafort*-BAP produce identical outcomes; our hypothetical debtor, for example, could exclude her monthly $100 contribution under either approach. *Compare Seafort*, 437 B.R. at 210, *with Anh-Thu Thi Vu*, 2015 WL 6684227, at *4. But a debtor who began making monthly 401(k) contributions less than six months before

bankruptcy would likely have a higher disposable income under the CMI interpretation. *See Anh-Thu Thi Vu*, 2015 WL 6684227, at *4.

To recap, BAPCPA's insertion of the hanging paragraph into § 541(b)(7) has taken us from an "overwhelming consensus" among bankruptcy courts, *see Johnson*, 241 B.R. at 399, to four competing views of whether voluntary retirement contributions constitute disposable income in a Chapter 13 bankruptcy. *Compare Johnson*, 346 B.R. at 263, *with Prigge*, 441 B.R. at 677 n.5, *with Seafort*, 437 B.R. at 210, *and with Anh-Thu Thi Vu*, 2015 WL 6684227, at *4–5. Our decision in *Seafort*, 669 F.3d at 663, is the only circuit court opinion to consider the issue. *See RESFL FIVE*, 2017 WL 4348897, at *5–6 (collecting cases). And although we rejected the *Johnson* approach in *Seafort*, we expressly declined to decide between the remaining interpretations. *See* 669 F.3d at 674 n.7 ("Our view is not relevant here[] because this issue is not presently before us.").

### III.

With the legal landscape in view, we turn to Davis's appeal. Davis argues that the hanging paragraph in § 541(b)(7) excludes from her disposable income, as defined in § 1325(b)(2), the amount she contributed monthly to her 401(k) prior to bankruptcy. Among the four competing interpretations of the hanging paragraph, three support Davis's view: *Johnson*, *Seafort*-BAP, and CMI. But our decision in *Seafort*, 669 F.3d at 674, rejected the *Johnson* interpretation, so we do not consider it here. *See United States v. Mateen*, 739 F.3d 300, 304 (6th Cir.), *rev'd en banc on other grounds*, 764 F.3d 627 (6th Cir. 2014) (noting that we are bound by a "prior panel's statutory interpretation" where it was "essential to the decision"). That leaves Davis with the *Seafort*-BAP and CMI interpretations for support. In contrast, the *Prigge* interpretation supports the Trustee's position, which is that voluntary retirement contributions can never be excluded from disposable income, regardless of whether the debtor was making such contributions prior to her bankruptcy. Davis's appeal asks us to decide between these competing interpretations.

We start with the text. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Section 541(b)(7) excludes from property of the estate "any amount . . . withheld by an employer from

the wages of employees for payment as contributions" to a 401(k) plan. 11 U.S.C. § 541(b)(7)(A). The hanging paragraph then continues, "except that *such amount* under this subparagraph *shall not constitute disposable income* as defined in Section 1325(b)(2)." *Id.* (emphases added).

We must determine whether "such amount," which "shall not constitute disposable income," encompasses the continued monthly 401(k) contributions Davis sought to exclude from her disposable income in her proposed bankruptcy plan. *See id.* § 541(b)(7). "Such amount" refers to "any amount . . . withheld by an employer from the wages of employees for payment as contributions" to a 401(k) plan. *See id.* Davis's argument implies that the relevant "amount" of those contributions that is excluded from her disposable income is the sum her employer withheld from her wages *each month*. Conversely, the Trustee suggests that the "amount" excluded is simply the aggregate 401(k) contributions that Davis had accumulated in her 401(k) account prior to her bankruptcy.

Neither reading makes perfect sense of the text. "Amount" is defined as the "total financial value or cost (of something)." *Oxford English Dictionary* (3d ed. 2019). The "something" that is being measured depends on context. It can be an individual number ("the *amount* of the policy is [$]10,000"), or it can be an aggregate number ("the . . . *amount* of worthless IOUs collected during each day's business"). *Amount*, Merriam-Webster Unabridged Online, https://unabridged.merriam-webster.com/unabridged/amount (last visited Feb. 20, 2020).

Here, context points in both directions. On the one hand, the hanging paragraph excludes the amount of the debtor's 401(k) contributions from "disposable income as defined in Section 1325(b)(2)." 11 U.S.C. § 541(b)(7). Disposable income is defined in terms of *monthly* income and expenses. *Id.* § 1325(b)(2). That suggests that a debtor's monthly contribution is the "amount" that "shall not constitute disposable income." *See id.* § 541(b)(7). On the other hand, the hanging paragraph is framed as an exception to § 541(b)(7)'s general rule that "property of the estate" does not include the "amount" of the debtor's 401(k) contributions. There, the relevant "amount" seems to be the debtor's aggregate 401(k) contributions. *See id.* § 541(b).

Further confounding our search for meaning, § 541(b)(7) is a grammatical puzzle. *See Seafort*, 669 F.3d at 671 (describing the hanging paragraph as "inelegantly drafted" (citing *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011)). The hanging paragraph begins with the conjunction "except that," which, to no one's surprise, is generally used to introduce an exception to an otherwise-applicable general rule. *See, e.g.*, 2 U.S.C. § 4915(b)(1) ("An unforeseen vacancy . . . during an academic year may be filled, *except that* no appointment may be made . . . for service to begin on or after October 1 . . . ." (emphasis added)). Yet the hanging paragraph's exception has no logical connection to § 541(b)(7)'s general rule. Property of the estate and disposable income are wholly independent concepts under the bankruptcy code. *Compare* 11 U.S.C. § 541, *with id.* §1325. We are therefore tasked with choosing between two interpretations, either of which will do some violence to the text. "The choice is one between the lesser of evils." *See* David Gray Carlson, *The Chapter 13 Estate and Its Discontents*, 17 Am. Bankr. Inst. L. Rev. 233, 233 (2009).

Established canons of construction counsel us to rule in favor of Davis. First, the reenactment canon provides that whenever Congress amends a statutory provision, "a significant change in language is presumed to entail a change in meaning." *Arangure v. Whitaker*, 911 F.3d 333, 341 (6th Cir. 2018). Here, Congress enacted BAPCPA against the backdrop of an "overwhelming consensus among bankruptcy courts" that wages withheld by an employer as voluntary 401(k) contributions constituted part of the debtor-employee's disposable income. *See Johnson*, 241 B.R. at 399. BAPCPA's insertion of the hanging paragraph into § 541(b)(7) represents a substantial change to the statutory text. We must therefore presume that the hanging paragraph altered existing law. *Arangure*, 911 F.3d at 341.

The presumption against ineffectiveness offers similar guidance. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 63 (2012). That presumption reflects "the idea that Congress presumably does not enact useless laws." *United States v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., concurring). In other words, when the plain meaning of a provision is not clear, we should avoid interpretations that render the provision a "dead letter." *United States v. Hayes*, 555 U.S. 415, 427 (2009) (quoting *United States v. Hayes*, 482 F.3d 749, 762 (4th Cir. 2007)

(Williams, J., dissenting)). Thus, we should be skeptical of interpretations that deprive the hanging paragraph of any meaningful effect.

Finally, the canon against surplusage provides a related command. It conveys the familiar rule that courts should "give effect, if possible, to every word Congress used." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632 (2018) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). This means that "[i]f a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision . . . and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred." Scalia & Garner, *supra*, at 176. Here, therefore, we should favor a construction of the hanging paragraph that leaves both it and § 1325(b)(2) with independent effect.

Applying those principles to Davis's appeal, we conclude that the hanging paragraph is best read to exclude from disposable income the monthly 401(k)-contribution amount that Davis's employer withheld from her wages prior to her bankruptcy. That interpretation reads the amendment to § 541(b), which added the hanging paragraph, in a way that actually amends the statute. It also gives a meaningful effect—one not already accomplished by § 1325(b)(2)—to Congress's instruction in § 541(b)(7) that 401(k) contributions "shall not constitute disposable income."

The Trustee's proposed interpretation fails on these objectives. Instead, as the Trustee concedes, its interpretation would read the hanging paragraph as merely "counteract[ing] any suggestion that the exclusion of [accumulated 401(k)] contributions from property of the estate constitutes postpetition income of the debtor." Appellee Br. at 24. But that interpretation "makes no sense" because assets are not income. 5 *Collier on Bankruptcy* ¶ 541.23[1] (16th ed. 2019). Those accumulated funds "would never be considered . . . disposable income" under § 1325(b)(2). *Id.*; *see McCullers*, 451 B.R. at 505 ("[I]t is unlikely even without the language in question that excluding sums earned by the debtor prepetition from property of the estate would ever be construed as creating postpetition disposable income to [the] debtor."). Thus, the Trustee's interpretation would render the hanging paragraph a "dead letter." *Hayes*, 555 U.S. at 427.

The dissent points to dividends, capital gains, and early withdrawals from retirement accounts as examples of income that could be protected by the hanging paragraph under the Trustee's interpretation. But even if those post-petition events would constitute disposable income under the pre-petition formula in § 1325(b)(2), it is unclear how the hanging paragraph would protect them. *See* § 541(b)(7). Dividends, capital gains, and early withdrawals are not "amounts . . . *withheld by an employer from the wages of employees*." *See id.* (emphasis added). Indeed, the Trustee essentially conceded that early withdrawals are not within the scope of the hanging paragraph when asked at argument. *See* Oral Argument at 26:05–26:25, *In re Davis* (No. 19-3117), http://www.ca6.uscourts.gov/audio-files-completed-arguments. The dissent's examples, therefore, fail to buttress the Trustee's position.

There remains the puzzle of the hanging paragraph's conjunction, "except that." *See* 11 U.S.C. § 541(b)(7). As a subordinating conjunction, it "makes no sense grammatically" in the hanging paragraph. *In re Hall*, No. 12 B 43452, 2013 WL 6234613, at *7 n.4 (Bankr. N.D. Ill. 2013). An exclusion from disposable income—regardless of how it is interpreted—cannot be understood as an exception to an exclusion from property of the estate. *See* 5 *Collier on Bankruptcy*, *supra*, ¶ 541.23[1]. Indeed, the dissent's interpretation fares no better; it reads the hanging paragraph as accomplishing nothing, which hardly creates an exception to § 541(b)(7)'s general rule. Under any interpretation, the conjunction will remain a "gordian knot" because it ties together two unrelated provisions of the Bankruptcy Code. *See In re Jensen*, 496 B.R. at 620.

We note, however, that this grammatical oddity is not without precedent in the Code. Other provisions also use "except that" to signal something besides an exception from a general rule. *See, e.g.*, 11 U.S.C. § 351(2) ("[T]he trustee shall mail . . . a written request to each appropriate Federal agency to request permission . . . to deposit the patient records with that agency, *except that* no Federal agency is required to accept patient records under this paragraph." (emphasis added)); 11 U.S.C. § 724(b) (Property subject to both an unavoidable lien and an allowable tax claim "shall be distributed—(1) first, to any holder of an allowed claim secured by a lien . . . [and] (2) second, to any holder of a claim of a kind specified in section 507(a)(1)(C) or 507(a)(2) (*except that* such expenses under each such section . . . shall be limited to expenses

incurred under this chapter . . .)" (emphasis added)). These provisions, like the hanging paragraph, appear to use "except that" to mean something like "moreover" or "and also."[2]

This use of "except that" is certainly not grammatically correct. But Congress's use of "awkward, or even ungrammatical" language does not alleviate our obligation to interpret the statute as best we can. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534–35 (2004). Here, we conclude that the hanging paragraph is best read to allow Davis to exclude from her disposable income the monthly 401(k)-contribution amount that her employer withheld from her wages prior to her bankruptcy.

The counterarguments do not persuade us otherwise. The Trustee argues that the hanging paragraph's location in § 541—which focuses on pre-petition assets—indicates that it does not apply to post-petition 401(k) contributions. But that argument ignores the hanging paragraph's express reference to § 1325(b)(2). *See* 5 *Collier on Bankruptcy*, *supra*, ¶ 541.23[1] ("[T]he reference to disposable income under Section 1325(b) . . . removes any doubt that postpetition contributions . . . are to be excluded from the disposable income calculation."). And the Trustee's position fails to recognize the significance of Congress's choice to reference § 1325(b)(2) rather than § 1325(b)(1). *See Seafort*, 437 B.R. at 209 ("Conspicuously, § 541(b)(7) makes no reference to '*projected* disposable income.'" (emphasis added)). Section § 1325(b)(2) measures disposable income exclusively by the debtor's income in the six-month period prior to filing her petition. In contrast, § 1325(b)(1) requires courts to forecast the debtor's "*projected* disposable income." *Hamilton*, 560 U.S. at 524 (emphasis added). Our interpretation is entirely consistent, therefore, with the pre-petition focus of § 541. Further, the hanging paragraph's express reference to § 1325(b)(2) reinforces our conclusion that Congress intended to allow a debtor to exclude from her disposable income the 401(k)-contribution amount withheld from her monthly wages prior to bankruptcy.

---

[2]The dissent implicitly relies on this same reading of "except that." Under its interpretation, "not only is the value of the 401(k) account at the time of filing not considered property of the estate, *but it also* 'shall not constitute' any part of a debtor's post-petition 'disposable income.'" *See* Dissenting Op. at 20 (emphasis added).

The dissent expresses dismay at the policy consequences of our interpretation. It suggests that our ruling "invites abuse by debtors" and incentivizes those in financial distress to "enhance dramatically" their 401(k) contributions. Dissenting Op. at 26. But our task "is to apply the words of the statute." *Hadden v. United States*, 661 F.3d 298, 303 (6th Cir. 2011). Congress chose in BAPCPA to introduce several debtor-friendly protections into the bankruptcy code. *See, e.g.*, 11 U.S.C. § 1322(f) (excluding wages used to repay 401(k) loans from disposable income); *id.* § 1325(b)(2)(A)(ii) (excluding charitable contributions from disposable income); *id.* § 541(b)(7) (excluding retirement savings from property of the estate); *see also* 5 *Collier on Bankruptcy*, *supra*, ¶ 541.23[1] (noting that the hanging paragraph "is in accord with numerous other provisions enacted in 2005 that similarly protect retirement savings"). Whatever the wisdom of these policies, we would not substitute our "drafting pen" for Congress's. *See* Dissenting Op. at 26.

Additionally, the dissent argues that our interpretation will upset "settled expectations" by deviating from our court's dictum in *Seafort*, 669 F.3d at 674 n.7. Dissenting Op. at 25. But we have never afforded stare decisis weight to a party's reliance on dictum. *See, e.g.*, *Slusser v. United States*, 895 F.3d 437, 440 (6th Cir. 2018); *Coca-Cola v. Procter & Gamble*, 822 F.2d 28, 30 (6th Cir. 1987); *see also Gonzalez v. United States*, 553 U.S. 242, 256 (2008) (Scalia, J., concurring) ("[A] formula repeated in dictum but never the basis for judgment is not owed *stare decisis* weight."). The dissent's application of stare decisis principles here is at odds with the firmly established rule that prior-panel dictum has no binding effect. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("[O]nly *holdings* are binding, not *dicta*.").

Our decision today builds on *Seafort*, 669 F.3d 662. Unlike Davis, the debtor in *Seafort* sought to exclude from her disposable income 401(k) contributions that she had not been making prior to bankruptcy. *Id.* at 664. *Seafort* rejected *Johnson*'s view that the hanging paragraph allowed debtors to begin making 401(k) contributions post-petition and then deduct those contributions from their disposable incomes. *Id.* at 672–73 (concluding that the "larger context" of § 541 establishes a "fixed point in time" on the petition date). We do not disturb that analysis. But *Seafort* acknowledged that "§ 541(b)(7) must provide *some* sort of protection for voluntary retirement contributions in Chapter 13 cases," 669 F.3d at 672, and the court expressly declined

to decide what that protection included, *id.* at 674 n.7. We now conclude that the hanging paragraph is best read to exclude from disposable income a debtor's post-petition monthly 401(k) contributions so long as those contributions were regularly withheld from the debtor's wages prior to her bankruptcy.

IV.

Our holding is narrow. We do not choose between the *Seafort*-BAP and CMI interpretations because either would produce the same result in this case. The CMI interpretation would allow Davis to deduct the average monthly contribution she made in the six months prior to bankruptcy, *Anh-Thu Thi Vu*, 2015 WL 6684227, at *4–5, whereas *Seafort*-BAP would allow her to deduct the monthly amount she contributed "on a consistent basis pre-petition," *see In re Thompson*, 2018 WL 1320171, at *2 (applying *Seafort*, 437 B.R. 204). Here, Davis's employer withheld $220.66 in 401(k) contributions each month from Davis's wages for at least six months prior to her bankruptcy. We hold only that a debtor in like circumstances may deduct her monthly 401(k) contributions from her disposable income under § 1325(b)(2). *See* 11 U.S.C. § 541(b)(7)(A).

Our holding should not be read to curtail the good-faith analysis required by § 1325(a)(3). That provision prohibits a bankruptcy court from confirming a Chapter 13 plan unless the debtor proposed it in good faith. *See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 455 (6th Cir. 2009). Our reading of the hanging paragraph may necessitate a more searching good-faith analysis to minimize the risk that a debtor contemplating bankruptcy might begin making 401(k) contributions prior to filing to lower the amount she must ultimately repay her creditors. Here, however, there is no assertion that Davis proposed her plan in bad faith.

* * *

For the foregoing reasons, we VACATE the bankruptcy court's order confirming Davis's Chapter 13 plan and REMAND for further proceedings.

-------------------

**DISSENT**

-------------------

READLER, Circuit Judge, dissenting. Considering that the federal courts have answered today's question four different ways, it is perhaps no surprise that we too are not of one mind. But in selecting between those approaches, we do not write on a clean slate. In *Seafort v. Burden* (*In re Seafort*), we all but held that a debtor cannot exclude voluntary retirement contributions from post-petition disposable income, even if the debtor began making contributions before filing for bankruptcy. 669 F.3d 662, 674 n.7 (6th Cir. 2012). While that decision arguably is not controlling, I would give it the weight it deserves. For to my mind, it is correct.

In the Bankruptcy Abuse Prevention and Consumer Protection Act (or "BAPCPA"), Congress adopted a simple, bright-line rule: a debtor's pre-filing 401(k) contributions are protected from creditors; those sought to be made during the post-filing Chapter 13 reorganization period are not. That is the lone conclusion to draw from the statutory amendments to the bankruptcy code enacted by BAPCPA, from the case law that proceeded BAPCPA's adoption, and from the interpretive clues left by Congress.

1. Start with the historical case law backdrop. Before BAPCPA, the Supreme Court had interpreted the then-current version of the bankruptcy code to exclude a Chapter 13 debtor's pre-filing 401(k) savings from the "property of the estate" potentially reachable by creditors. *See Patterson v. Shumate*, 504 U.S. 753, 760 (1992). The exclusion from the "property of the estate" for pre-petition 401(k)'s and other ERISA-qualified plans, the Supreme Court concluded, was implied by 11 U.S.C. § 541(c)(2), when read in conjunction with ERISA. *Id.* Assessing both ERISA and the bankruptcy code, the Supreme Court reasoned that because § 541(c)(2) excludes from the property of the estate those interests subject to anti-alienation provisions, and because ERISA-qualified plans are subject to anti-alienation provisions, ERISA-qualified plans are excluded from the property of the estate. *Id.*

By the same token, there was also general agreement among the federal courts, pre-BAPCPA, regarding how to treat a debtor's post-petition 401(k) contributions. Although not

addressed by the Supreme Court, the predominant view was that post-petition contributions were part of a debtor's "disposable income," *see* 11 U.S.C. § 1325(b)(2), and thus could not be exempted from the claims of creditors as an expense "reasonably necessary" to a debtor's maintenance. *See, e.g.*, *In re Johnson*, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999); *In re Austin*, 299 B.R. 482, 486–87 (Bankr. E.D. Tenn. 2003); *In re Keating*, 298 B.R. 104, 110 (Bankr. E.D. Mich. 2003); *In re Regan*, 269 B.R. 693, 697 (Bankr. W.D. Mo. 2001); *In re Merrill*, 255 B.R. 320, 323–24 (Bankr. D. Or. 2000); *In re Cox*, 249 B.R. 29, 32 (Bankr. N.D. Fla. 2000); *In re Cohen*, 246 B.R. 658, 666–67 (Bankr. D. Colo. 2000); *In re Hansen*, 244 B.R. 799, 802 (Bankr. N.D. Ill. 2000). But that view was not universal. The Ninth Circuit had adopted a case-by-case test as to whether post-petition contributions were disposable income. *Hebbring v. U.S. Tr.*, 463 F.3d 902, 906–07 (9th Cir. 2006). The Second Circuit similarly had rejected a bright-line rule that a debtor's contributions to pensions and pension loans are disposable income, and instead instructed bankruptcy judges to exercise discretion on a case-by-case basis. *New York City Emp's Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124, 129 (2d Cir. 2001); *see also In re Guild*, 269 B.R. 470, 473–74 (Bankr. D. Mass. 2001); *In re King*, 308 B.R. 522, 530–31 (Bankr. D. Kan. 2004).

Congress writes against the backdrop of court decisions. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). Given the universal view that pre-filing 401(k) savings were protected from creditors, and the majority (but not universal) view that post-filing voluntary 401(k) contributions were not, Congress sought to codify expressly these predominant judicial interpretations. It did so in 11 U.S.C. § 541.

By its title, § 541's focus is on the "Property of the Estate." Section 541(a) describes which assets held by the Chapter 13 debtor are included in the "property of the estate." Assets that make up the "property of estate" are sometimes used to pay claims against the debtor, for example, when the debtor, as part of her bankruptcy plan, surrenders collateral to satisfy secured creditors. *See* 11 U.S.C. § 1327(b) ("Except as *otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor.") (emphasis added); 7 Norton Bankr. L. & Prac. 3d § 149:13 (2020). The value of the

assets included in the property of the estate is also used to measure whether creditors are receiving sufficient payments as part of the debtor's bankruptcy plan. *See id.* § 147:1 (explaining that a Chapter 13 debtor's property of estate is "important for many purposes" including whether the proposed plan would pass the "best interests of the creditors test" necessary for plan confirmation).

Section 541(b), in contrast, describes a host of assets held by the debtor that the "[p]roperty of the estate does not include," meaning they are not reachable by creditors and do not influence the debtor's bankruptcy plan. 11 U.S.C. § 541(b). Relevant here is the exception found in § 541(b)(7)(A). Before § 541(b)(7)(A)'s enactment, *Patterson* had utilized tools of statutory construction to read a different provision, § 541(c)(2), in conjunction with sections of ERISA, to conclude that a debtor's pre-filing 401(k) contributions were exempt from the property of the estate. *See* 504 U.S. at 760. In BAPCPA, Congress enacted that judicial interpretation in express terms: "Property of the estate does not include . . . any amount withheld by an employer from the wages of employees for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 . . . ." 11 U.S.C. § 541(7)(A)(i)(I).

Having followed the background judicial rule as to pre-petition 401(k) assets, there is no indication that Congress simultaneously displaced the parallel background judicial rule as to post-petition 401(k) contributions. Had Congress decided against a uniform approach to the existing case law backdrop, thereby supplanting the background majority rule that post-petition 401(k) contributions are part of a debtor's disposable income and thus accessible by creditors, it would have said so in express terms. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (holding that when Congress incorporated the Federal Employers' Liability Act ("FELA") into the Jones Act without alteration, it also incorporated the prior judicial interpretation of FELA in the Act, as that interpretation was "well established," and "Congress is aware of existing law when it passes legislation"). And Congress, of course, knew how expressly to exclude a debtor's assets from creditors. Case in point: it expressly excluded pre-petition 401(k) contributions from the "property of the estate" available to creditors. 11 U.S.C. § 541(b)(7)(A). Yet Congress, neither in § 541(b) nor anywhere else, made any express reference to a Chapter 13 debtor's post-

petition 401(k) contributions being excluded from the disposable income available to creditors during the repayment period. Especially in light of the express language in § 541(b)(7)(A), that absence is telling. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983) (alterations omitted))).

That Congress did not disrupt the then-existing approach to post-petition 401(k) contributions makes sense not only as a reflection of Congress's consistent treatment of the Chapter 13 case law backdrop, but also as a reflection of Congress's efforts to balance the interests of debtors and creditors. Through § 541(b)(7)(A), Congress preserved a debtor's pre-filing retirement contributions, which were made at a time when the debtor was unencumbered by the bankruptcy process, incentivized by the tax code, and had an eye to the future. Compare those circumstances, however, to the aftermath of a Chapter 13 filing. By her filing, the debtor has acknowledged that her debts have overwhelmed her income, that she cannot honor obligations made to creditors, and that a new financial path is in order. In that setting, the bankruptcy laws harmonize the needs of debtors and unsecured creditors. *See* 8A C.J.S. *Bankruptcy* § 2 (2020). For debtors, Congress afforded them the opportunity to resolve many debts over the course of a three- or five-year period, where a debtor's spending is tightly controlled by the contours of her bankruptcy plan. 8B C.J.S. *Bankruptcy* § 1204 (2020). For unsecured creditors, Congress afforded them a handful of years over which repayment by the debtor is emphasized, to the extent the debtor has "disposable income," that is, income above that needed to afford "current," "necessary" expenses for the debtor's "maintenance or support." *Id.*; 11 U.S.C. § 1325(b)(2). And the expenses necessary for current support do not include, at least for three to five years, additional 401(k) contributions a debtor may want to make. *Seafort*, 669 F.3d at 674. As a trade-off for bankruptcy protection and the discharging of debts, and as an effort to compensate unsecured creditors as fairly as possible, the bankruptcy code does not guarantee 401(k) contributions by a debtor until a bankruptcy plan has run its course.

2. To fortify its protection of pre-filing 401(k) contributions, Congress made a second addition to § 541(b)(7)(A), one commonly referred to as the "hanging paragraph." There, Congress added to § 541(b)(7)(A)'s "any amount" provision the clause: "except that such amount under this subparagraph shall not constitute disposable income." As we explained in *Seafort*, with § 541(b)(7)(A) addressing the gross "amount" of a debtor's pre-filing 401(k) contributions, the ensuing "such amount under this subparagraph" clause must reference the same gross "amount" referenced earlier in the subparagraph: pre-filing 401(k) contributions. 669 F.3d at 670 ("[A] close reading of [§] 541(b)(7) indicates that 'such amount' excluded from disposable income refers to prepetition contributions." (quoting *In re McCullers*, 451 B.R. 498, 503 (Bankr. N.D. Cal. 2011))). Equally instructive is the hanging paragraph's opening phrase: "except that." 11 U.S.C. § 541(b)(7)(A). That too is evidence the paragraph was intended to further protect a debtor's pre-petition 401(k) account. That is, not only is the value of the 401(k) account at the time of filing not considered property of the estate, *see* 11 U.S.C. § 541(b)(7)(A), but it also "shall not constitute" any part of a debtor's post-petition "disposable income." *McCullers*, 451 B.R. at 503–04. ("Use of the term 'except that' suggests that the purpose of the language is merely to counteract any suggestion that the exclusion of such contributions from property of the estate constitutes postpetition income to the debtor.").

It is often the case that congressional "drafters intentionally err on the side of redundancy," to ensure nothing slips through the legislative cracks. Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stan. L. Rev. 901, 934 (2013) (noting that Congressional drafters "intentionally err on the side of redundancy to capture the universe or because you just want to be sure you hit it") (internal quotation marks omitted). For the sake of certainty, the hanging paragraph serves as a "backstop" against creative arguments by unsecured creditors seeking to reach the debtor's pre-petition 401(k) assets during the Chapter 13 repayment period. *Cf. Yates v. United States*, 574 U.S. 528, 562 (2015) (Kagan, J., dissenting, joined by Scalia, Kennedy, and Thomas, JJ.) (noting that a seeming statutory redundancy merely "reflects belt-and-suspenders caution: If § 1519 contained some flaw, § 1512(c)(1) would serve as a backstop").

And zealously guarding in all respects pre-petition 401(k) assets is not a trivial concern. Generally speaking, a well-performing 401(k) account generates earnings and/or income, yet "[n]either 'earnings' nor 'income' is defined by the Bankruptcy Code." 7 Norton Bankr. L. & Prac. 3d § 149:3 (2020). To the extent the treatment of earnings, income, or other assets related to a pre-petition 401(k) account is unsettled, creditors, in the absence of the hanging paragraph, could argue that amounts generated by a pre-petition 401(k) during the post-petition repayment period qualify as disposable income, which those creditors may claim. Yet those amounts trace back to the same pre-petition 401(k) account created initially from funds "withheld by an employer from the wages of employees." 11 U.S.C. § 541(b)(7)(A). Some further examples:

- *Gains and Dividends*. While satisfying their three-to-five-year repayment period, many debtors will earn capital gains or receive dividend payments on pre-filing 401(k) contributions. *See* Jack VanDerhei, et al., *401(k) Plan Asset Allocation, Account Balances, and Loan Activity in 2016* (Employee Benefit Research Institute), Sept. 10, 2018, at 1. ("The bulk of 401(k) assets were invested in stock."); *Income*, Black's Law Dictionary (11th ed. 2019) ("The money or other form of payment that one receives . . . from . . . business, *investments*, . . . .") (emphasis added); *In re Zahn*, 391 B.R. 840, 845 (B.A.P. 8th Cir. 2008) (noting that income includes "interest or profit realized on an asset's principal value").

- *Early Withdrawals*. During the repayment period, a debtor may choose to pay the 10% early withdrawal penalty and tap into her 401(k). *The 401(k) Handbook* ¶ 103 (Jane Meacham ed., 2019); *see also In re Sullivan*, 596 B.R. 325, 328–30 (Bankr. N.D. Tex. 2019) (rejecting a Chapter 13 trustee's plan modification proposal to increase debtor payments based on the trustee's argument that the debtor's income unexpectedly increased when he withdrew money from a concededly exempt 401(k) account).

- *Mandatory Withdrawals*. 401(k) account holders must take mandatory minimum withdrawals after they reach age 70 and a half. *See* Meacham, *supra* ¶ 265. For a Chapter 13 debtor, those withdrawals could begin during her repayment period. *See In re Zahn*, 391 B.R. at 846 n.2 (noting but leaving open for subsequent resolution whether mandatory withdrawals from a 401(k) may be income per 11 U.S.C. § 101(10A)).

- *Involuntary Cash-Outs*. A debtor whose employment is terminated and has less than $5,000 dollars in her account may be forced by her ex-employer to receive her 401(k) funds during her Chapter 13 repayment period, even over the debtor's objection. Meacham, *supra* ¶ 264.

Experienced investors, accountants, and financial advisors may well envision other similar scenarios.

Absent the hanging paragraph, an unsecured creditor could characterize each of these amounts received during the repayment period as disposable income. In a somewhat analogous context, for example, we held, pre-BAPCPA, that a tax refund for pre-filing income received by a Chapter 13 debtor during the repayment period is disposable income accessible by creditors. *In re Freeman*, 86 F.3d 478, 481 (6th Cir. 1996) (holding that a Chapter 13 debtor's tax refund, though generated by pre-petition income and exempt under state law, could still be disposable income); *see also In re Harchar*, 694 F.3d 639, 647 (6th Cir. 2012) ("Tax refunds for Chapter 13 debtors are considered income." (citing *In re Freeman*, 86 F.3d at 481–82)). If not for the hanging paragraph, one could reach the same conclusion as to pre-petition 401(k) assets realized or received post-petition. Yet Congress put those arguments to bed through the hanging paragraph; pre-filing 401(k) contributions cannot be disposable income, no matter the form they take or the point at which they are received. *See* Gluck, *supra*, at 934 (acknowledging Congress's frequent desire "to 'capture the universe'"). In that sense, the clause is neither ineffective nor superfluous.

Rejecting this straightforward understanding of the hanging paragraph, the majority opinion suggests that the amounts "withheld by an employer from the wages of employees," 11 U.S.C. § 541(b)(7)(A), would never include "dividends, capital gains, and early withdrawals," meaning that § 541(b)(7)(A) would never operate to shield those amounts from creditors. Maj. Op. at 12. But that narrow reading of § 541(b)(7)(A) proves too much. After all, presumably a significant part of a debtor's pre-petition 401(k) account also consists of monies that similarly were not amounts "withheld by an employer from the wages of employees," for example, matching contributions made by one's employer or earnings (capital gains, dividends) derived from the employee's contributions. And all agree that those amounts in a pre-petition 401(k) are protected just as much as amounts specifically "withheld by an employer from the wages of employees." So too, then, are post-petition transactions and fluctuations regarding the pre-petition 401(k). Congress plainly (and understandably) sought equal treatment, and equal protection, of amounts tied to a pre-petition 401(k).

We likewise understand Congress to act "intentionally and purposefully" when it "includes particular language in one section of a statute but omits it in another." *Seafort*, 669 F.3d at 672 (quoting *Keene Corp*, 508 U.S. at 208). That canon of interpretation also weighs in favor of this straightforward reading of § 541(b)(7)(A). Many 401(k) accounts allow the account holder to borrow from the account and repay the loan later. Meacham, *supra* ¶ 430. With that practice in mind, Congress explicitly exempted those repayments from disposable income, even if the debtor repays her 401(k) loan during the Chapter 13 repayment period. *See* 11 U.S.C. § 1322(f) ("[A]ny amounts required to repay [a 401(k) loan] shall not constitute 'disposable income' under section 1325."). That approach is consistent with Congress's general interest in protecting a debtor's pre-petition 401(k) account. In *Seafort*, we found it significant that in § 1322 Congress explicitly exempted 401(k) *loan repayments*, but not 401(k) *contributions*. 669 F.3d at 671–72 (citing *In re Prigge*, 441 B.R. 667, 677 (Bankr. D. Mont. 2010)). We reasoned that since § 1322 was within Chapter 13, Congress, consistent with the principle that it omits purposefully, did not intend for post-filing 401(k) contributions to be exempt from disposable income. *Id.*

In reaching that conclusion, *Seafort* thoroughly analyzed competing views and decisions addressing how to interpret the hanging paragraph. *Id.* at 667–73. After an extensive analysis, one that covered largely the same arguments raised by the parties here, we rejected the majority opinion's reading of the hanging paragraph. And we do not stand alone in that respect. *See, e.g.*, *In re Melendez*, 597 B.R. 647, 660–61 (Bankr. D. Colo. 2019); *In re Parks*, 475 B.R. 703, 707–09 (B.A.P. 9th Cir. 2012); *Prigge*, 441 B.R. at 677. Agreeing with *Seafort*, I would honor its conclusion.

3. Despite the commonsense understanding that Congress, through BAPCPA, balanced the interests of creditors and debtors and uniformly adopted the background case law principles, and in the face of our prior unanimous conclusion in *Seafort*, the majority opinion charts another course. It finds a different and indeed expansive meaning in the hanging paragraph, a clause it nonetheless argues "has no clear meaning." That conclusion suffers from numerous flaws.

One, the majority opinion's interpretation of the hanging paragraph does not make sense of its location. The hanging paragraph is located in § 541, which, by its title, addresses the

"Property of the Estate."  As mentioned, the property of the estate consists of assets held by the debtor at the time she files for bankruptcy.  *See* 11 U.S.C. § 541(a)(1).  Why would a section about property of the estate ever sweep in something—here, post-petition 401(k) contributions— that no one contends would ever be considered property of the estate?  Had Congress wanted to effect the change suggested by the majority opinion, it undoubtedly would have included the hanging paragraph (or something like it) in the relevant section of Chapter 13, not in the broader "property of the estate" section of the bankruptcy code applicable to both Chapter 7 and Chapter 13 debtors.  *Compare* 11 U.S.C. § 1322(f), *with* 11 U.S.C. § 541(b)(7)(A).

Congress's draftsmanship is particularly head-scratching if one accepts the majority opinion's observation that Congress, through the hanging paragraph, sought to make a "significant change" from how the courts had previously treated post-petition 401(k) contributions.  Maj. Op. at 10.  "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."  *Kelly v. Robinson*, 479 U.S. 36, 47 (1986) (internal citations and quotations omitted); *see, e.g.*, *Vance v. Ball State Univ.*, 570 U.S. 421, 470 (2013) (Ginsburg, J., dissenting) (observing that Congress explicitly overrode *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) through the Lilly Ledbetter Fair Pay Act of 2009).  The Supreme Court "has followed this rule with particular care in construing the scope of bankruptcy codifications."  *Kelly*, 479 U.S. at 47; *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 245–46 (1989) (reading the Bankruptcy Code of 1978 as altering pre-existing case law doctrine because "Congress expressly chose" to do so through "language . . . clearer than the language at issue in . . . *Kelly*").  If Congress intended to effect "significant change" from the pre-BAPCPA background rule that post-petition voluntary 401(k) contributions are disposable income, it is odd to think it chose to do so through an apparently misplaced hanging paragraph.

Two, the majority opinion's holding is in tension with BAPCPA's emphasis on curbing perceived abuses of the bankruptcy process by debtors.  *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011).  Through BAPCPA, Congress sought to discourage debtors from pursuing a Chapter 7 liquidation, where a debtor pays debts out of current assets, and instead to pursue a Chapter 13 reorganization, where a debtor pays debts out of income earned over the

next three to five years.  Elizabeth Warren, et al., *The Law of Debtors and Creditors* 253 (7th ed. 2014).  Having encouraged the use of Chapter 13's multi-year plan for repaying creditors, it is difficult to believe Congress simultaneously created a massive loophole permitting a Chapter 13 debtor nonetheless to dramatically undermine creditors by dedicating her post-petition income to a 401(k), for her own future use.

Take this case as an example.  At the time of her Chapter 13 filing, Davis owed $189,000 to her unsecured creditors.  She committed to a plan that would pay her creditors just $19,380, barely 10% of the debt she amassed.  To that end, Davis, despite having a gross monthly income of $5,627, attributed only $323 of that amount as disposable income available to her creditors. Davis calculated that diminutive figure in part by setting aside $220 of her gross monthly income to make contributions to her 401(k) account.  The majority opinion now blesses that effort, allowing Davis to shield an additional 40% of the already modest amount she could have paid to her creditors, leaving those creditors with just a dime for every dollar they are owed.  Quite a windfall, then, for Davis.

That is not to say Davis could never save for retirement, even in a post-petition Chapter 13 repayment setting.  Were her monthly living expenses to fall below the over $5,000 budgeted for those expenses, she could invest the difference in a 401(k) or another forward-looking investment device.  But at least for a three-to-five-year period, Congress curbed her from having her cake (over $5,000 for monthly living expenses) and eating it too (contributing $220 to a 401(k) over and above her monthly living expenses).

Three, the majority opinion upsets settled expectations.  Dicta or not, *Seafort* was clear in its instruction that post-petition 401(k) contributions are disposable income.  Numerous bankruptcy courts accepted that instruction in this exact situation.  *See, e.g.*, *In re Rogers*, 12-32558 (Bankr. E.D. Mich. 2012); *In re Caticchio*, 16-10800 (Bankr. N.D. Ohio 2016). Creditors have likely done the same, relying on our conclusion in *Seafort* to set interest rates to compensate themselves should a debtor default, on the assumption that any recovery would not be impeded by a debtor's additional 401(k) contributions.  *Cf.* Joshua Goodman & Adam Levitin, *Bankruptcy Law and the Cost of Credit: The Impact of Cramdown on Mortgage Interest Rates*, 57 J.L. & Econ. 139, 156 (2014) (finding statistical evidence that before the Supreme

Court prohibited the judicial practice, jurisdictions that allowed bankrupt debtors to reduce their mortgage principal through "cramdowns" faced higher interest rates than jurisdictions that did not permit such cramdowns). The majority opinion, however, upsets that large basket of settled expectations. In this way and many others, the majority opinion does not "build on" *Seafort*—it goes in an entirely different direction. Maj. Op. at 14.

Four, the majority opinion's reading of § 541 invites abuse by debtors. If, as the majority opinion concludes, all that is required to keep post-petition income out of a creditor's hands is for a debtor to have some track record (perhaps even as short as one month) of 401(k) contributions before filing, debtors will no doubt take advantage of that unexpected invitation. Sophisticated or not, every debtor surely would understand the incentive to enhance dramatically their 401(k) contributions if bankruptcy potentially was on the horizon, knowing they could shield that inflated contribution level while in bankruptcy. Those enhanced contributions, ironically, might even contribute to one's ultimate bankruptcy, taking away money that otherwise would be used for current expenses. Drafting legislation, to be sure, is not always a perfect science. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (describing 11 U.S.C. § 330(a)(1) of the Bankruptcy Code as "awkward, and even ungrammatical"). But it is surprising to learn that Congress's drafting pen was so wide of the mark, it actually incentivized, and perhaps even exacerbated, bankruptcy filings in this manner.

Those abuses, moreover, cannot be sufficiently policed through the bankruptcy court's enforcement of 11 U.S.C. § 1325(a)(3)'s good faith rule. As this expansive loophole understandably becomes a frequent tool for debtors, good faith inquiries will become the rule, rather than the exception, something Congress surely could not have intended. *See, e.g.*, *In re Barfknecht*, 378 B.R. 154, 164 (Bankr. W.D. Tex. 2007) (rejecting an interpretation of the good faith standard when the "proposed reading of the good faith standard would swallow up these other explicit statutory treatments, effectively rendering them nullities"). And it is seemingly little more than wishful thinking to believe the good faith requirement will predictably and consistently curb that widespread abuse. In our Circuit, the applicability of § 1325(a)(3) is a twelve-factor (yes, twelve!) totality of the circumstances test. *In re Barrett*, 964 F.2d 588, 592 (6th Cir. 1992). And even then, those factors are not exhaustive, nor is any one of the dozen or

more dispositive. *In re Alt*, 305 F.3d 413, 419 (6th Cir. 2002); *see also In re Caldwell*, 851 F.2d 852, 860 (6th Cir. 1988). Whatever the virtues of a totality of the circumstances test, predictable outcomes and consistent results are not among them. *United States v. Mead Corp.*, 533 U.S. 218, 241 (2001) (Scalia, J., dissenting) (describing "th'ol' 'totality of the circumstances' test" as the one "most feared by litigants who want to know what to expect"); *see also* Antonin Scalia, *Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179 (1989) (arguing that to adopt a totality of the circumstance test "is effectively to conclude that uniformity is not a particularly important objective"). Ironically, the majority opinion's rule coupled with the good faith totality test would functionally adopt the pre-BAPCPA minority rule of a "case-by-case" inquiry into whether post-petition voluntary 401(k) contributions should be exempted from disposable income. *Hebbring*, 463 F.3d at 906–07; *In re Taylor*, 243 F.3d at 129. Rather than concluding that Congress silently adopted that cumbersome minority approach, the better reading, to my mind, is that Congress instead imposed a conclusive rule, one that is far more manageable, and more consistent in application.

That leaves the majority opinion's observation regarding § 541's reference to 11 U.S.C. § 1325(b)(2). As the majority opinion sees things, because § 541(b)(7)(A) cites to § 1325(b)(2)'s "disposable income" provision (as opposed to § 1325(b)(1)'s "*projected* disposable income"), and because "disposable income" relies in part on a debtor's pre-filing income, the hanging paragraph allows a debtor to continue 401(k) contributions at a pre-filing level, making them exempt from "disposable income." The majority opinion thus turns on an oblique inference from a nuanced distinction.

To my mind, that delicate reading of §§ 541(b) and 1325(b)(2) has many interpretive holes. Take § 541(b) first. Nothing in § 541(b) speaks to protecting periodic actions like monthly 401(k) contributions. Section 541(b) identifies the items not included in the property of the estate by reference to the total amount of the asset at the time of bankruptcy, not the fractional nature in which the asset was accumulated. In other words, protecting the total value of a 401(k) asset accumulated pre-petition says nothing about authorizing additional periodic contributions post-petition.

Section § 1325(b)(2) is an equally poor vehicle for reaching the majority opinion's outcome. Section 1325, as its title indicates, addresses the requirements needed for "Confirmation of [the] plan [of reorganization]." Among the tasks necessary for a debtor to propose her three-to-five-year repayment plan is calculating the amount required "for the maintenance or support of the debtor" during the repayment period, with any remaining monies paid to creditors. 11 U.S.C. § 1325(b)(2)(A)(i). How that extrapolates into justification for a debtor to shield monthly 401(k) contributions during the repayment period is beyond me. After all, contributing to one's future retirement has nothing to do with the common understanding of maintaining or supporting oneself today. *See Maintenance*, Oxford English Dictionary Online (2020) (defining maintenance as "[t]he action of providing oneself, one's family, etc., with the means of subsistence or necessaries of life"); *Support*, Black's Law Dictionary (11th ed. 2019) (defining support as "Sustenance or maintenance; esp., articles such as food and clothing").

Nor, in any event, does § 541(b)(7)(A)'s reference to § 1325(b)(2) foreclose my reading of the hanging paragraph. A debtor's pre-filing 401(k) contributions can be realized or accessed during the Chapter 13 repayment period, which in turn could increase a debtor's post-petition "disposable income." 11 U.S.C. §1325(b)(2). Consider once again mandatory minimum withdrawals or other 401(k) disbursements after a Chapter 13 filing. If those disbursements begin after the debtor's bankruptcy filing, a creditor potentially could move to modify the confirmed plan under the auspices of § 1329(a), which allows a creditor to request that disposable income be increased in light of an unanticipated increase in debtor income during the Chapter 13 repayment period. *See Germeraad v. Powers*, 826 F.3d 962, 974 (7th Cir. 2016); *Barbosa v. Solomon*, 235 F.3d 31, 40–41 (1st Cir. 2000); *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989); *In re Scholl*, 605 B.R. 163, 178 (Bankr. S.D. Ohio 2019). Again, the hanging paragraph ensures that those amounts are not deemed disposable income.

For these reasons, I respectfully dissent.